**UNITED STATES of America ex rel. LEONG CHOY MOON, Relator-Appellant,**

v.

**Edward J. SHAUGHNESSY, District Director of the Immigration and Naturalization Service for the District of New York, Respondent-Appellee.**

**No. 121, Docket 23298.**

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1954.

Decided Dec. 23, 1954.

Spar, Schlem & Burroughs, New York City (Charles Spar, New York City, of counsel), for relator-appellant.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y., New York City (Matthew A. Campbell, Asst. U. S. Atty., New York City, and Lester Friedman,

Attorney, Immigration and Naturalization Service, United States Department of Justice, of counsel), for respondent-appellee.

Before CLARK, Chief Judge, and FRANK and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

The appellant is an admittedly deportable alien.[1] After a warrant of deportation had been issued directing his deportation to the mainland of China, which is under the control of the Chinese Communist Government, the appellant applied to the Attorney General for a stay of deportation on the ground that if deported to that country he would be subjected to physical persecution. That application was made under § 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253(h), which provides: "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason." The application was heard by an Immigration hearing officer, the record then being sent to the Acting Assistant Commissioner, Border Patrol, Detention and Deportation Division, the official duly delegated by the Attorney General to act upon such matters. The application was denied. There followed the issuance of a writ of habeas corpus which was argued before the District Court upon the administrative record, no other evidence being presented on behalf of the deportee. The District Court dismissed the writ without opinion, giving rise to this appeal.

The appellant's principal contention is that the administrative determination that he would not be subject to physical persecution if deported to Communist China was arbitrary and capricious, in that it ignored the evidence of appel-

[1] Because (1) he was an immigrant at the time of entry not in possession of a valid immigration visa, (2) he was an alien who entered the United States illegally after previous arrest and deportation, and (3) he had been convicted of violation of the United States narcotic laws. 8 U.S.C.A. §§ 1182(a) (20), 1182(a) (17), 1182(a) (23), 1251(a) (1).

lant's anti-Communism, had no factual support in the record, and was contrary to the announced views of the Immigration authorities in their administration of the Displaced Persons Act of 1948.[2]

In the field of immigration and nationality Congress has vested the executive branch of the Government with wide discretionary powers, and the scope of judicial review is closely circumscribed. In particular, we have held that under § 243(h) the question of whether deportation should be withheld because an alien fears persecution rests solely with the Attorney General or his delegate. United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392. We there pointed out that whereas the comparable section in the predecessor statute, § 23, Internal Security Act of 1950, 64 Stat. 1010, required withholding the deportation of any alien to any country in which the Attorney General "shall find" that such alien would be subjected to physical persecution, present § 243(h) modified that provision so as simply to authorize the Attorney General to withhold deportation to any country in which "in his opinion" the alien would be subjected to such persecution. We found in this change of language a clear indication that Congress intended the withholding of deportation in such circumstances to rest "wholly in the administrative judgment and 'opinion' of the Attorney General or his delegate." United States ex rel. Dolenz v. Shaughnessy, supra, 206 F.2d at page 394. This is not to say that the courts may not intervene when an alien has been denied appropriate procedural due process or a fair consideration of his application. But we are presented with nothing of that kind here. In accordance with § 243(a) of the Act this alien was given an opportunity, and failed, to elect a country for deportation that might be willing to accept him. And he declined to cooperate towards accomplishing his deportation to Formosa or other terri-

tory controlled by the Republic of China by refusing to execute such papers as were required by the Nationalist Chinese Government for admission to territory over which it exercises sovereignty. He was given full opportunity to testify and present evidence in support of his application, and there is nothing to indicate that the representative of the Attorney General did not reach his decision solely on what he believed to be the merits of the alien's application. In these circumstances we may not substitute our judgment for that of the Attorney General's representative. United States ex rel. Dolenz v. Shaughnessy, supra.

The appellant also contends that under the Immigration and Nationality Act of 1952 he may not be deported to Communist China. We cannot agree. § 243(a) of the Act, 8 U.S.C.A. § 1253(a), provides both for the various countries to which deportation may be had and for the order of their selection. First, deportation shall be to any country of the alien's choice (with certain exceptions) which is willing to accept him. Concededly the alien here refused to make a choice. Second, deportation shall then be to any country of which the alien is a subject, national or citizen, which is willing to accept him. This provision has not been violated here. For if, as the appellant contends, "country" in this provision means a territory under the control of a government recognized by the United States, and thus, in this instance, deportation to China means deportation to Formosa or other territories under the control of the Republic of China, this action was not required, because the alien has refused to file the application forms required by the Chinese Nationalist Government as a condition of its willingness to accept immigrants. On the other hand, if this provision prescribes deportation to Communist controlled territory, its requirement has been satisfied, since the Attorney General acting under the provisions of the

2. Since the appellant, prior to the instant proceeding, had already been deported he was not eligible for relief under the Displaced Persons Act of 1948, 50 U.S. C.A.Appendix, §§ 1951–1965, or the Refugee Relief Act of 1953, 50 U.S.C.A.Appendix, § 1971.

statute next mentioned has elected deportation to that territory. *Third*, deportation may finally be had, at the election of the Attorney General, to any of a number of countries, principally countries with which the alien has had some contact.[3] Under these provisions, deportation of this alien to the China mainland was authorized by one or more of the following subdivisions: "(3) to the country in which he [the alien] was born; (4) to the country in which the place of his birth is situated at the time he is ordered deported; (5) to any country in which he resided prior to entering the country from which he entered the United States; * * * or (7) * * * to any country which is willing to accept such alien into its territory", assuming, of course, that it turns out that the Chinese communist authorities are willing to accept this alien. Concededly, appellant was born and had resided on the mainland of China prior to his entry into the United States.

Appellant argues, however, that no matter what provision he is deported under, he can only be deported to a "country." And "country," he says, in these subdivisions and elsewhere in the statute can mean only a country recognized by the United States, citing Delany v. Moraitis, 4 Cir., 1943, 136 F.2d 129, 130, for the statute contemplates exchanges of communications between such "countries" and the United States, and no such exchanges can normally be had with countries we do not recognize.

We cannot agree that the word "country" in § 243(a) must be so limited. While it is true that parts of the statute contemplate communication with other countries, that is a far cry from saying that if communication is impossible, the other nation is not to be regarded as a "country." Such an interpretation would be an unnecessary departure from the ordinary meaning of the term. Indeed the reference in subdivision (7) of § 243(a) to "any of the foregoing *places* or countries", clearly indicates that "country" is not necessarily to be given the limited meaning claimed by the appellant, and we think this is certainly so as to subdivisions (3), (4), (5) and (7). Nor is appellant's interpretation warranted by the Moraitis case. There an alien was to be deported to "the country whence [he] came". That would have normally meant that he would have been deported to Greece, but since Greece was then occupied by Germany, the immigration authorities had proposed to deliver the alien into the custody of the Greek government-in-exile in England. In holding this proposal permissible, the court did not deal with the question whether the alien might have been sent to the occupied area, if the authorities had wished and been able to send him there. Moraitis is therefore not apposite to this case.

We conclude, therefore, that the appellant was properly deportable to the mainland of China. Nevertheless, taking judicial notice of the hazardous conditions in that area of the world, and in light of the expressed willingness of the Immigration authorities to deport this alien to Formosa if it can be accomplished, we are constrained to give the appellant another opportunity to cooperate with the Immigration authorities in bringing about his deportation to For-

---

3. Failing deportation to any of the countries referred to in "First" and "Second" above, § 243(a) provides that "deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—(1) to the country from which such alien last entered the United States; (2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory; (3) to the country in which he was born; (4) to the country in which the place of his birth is situated at the time he is ordered deported; (5) to any country in which he resided prior to entering the country from which he entered the United States; (6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or (7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

mosa or any other territory under the control of the Chinese Nationalist Government. To that end, in affirming the order below we shall stay our mandate for 90 days from the date of the filing of this opinion.

Affirmed.