**UNITED STATES ex rel. Polychronis PASCHALIDIS, Relator,**

v.

**DISTRICT DIRECTOR OF IMMIGRA-TION AND NATURALIZATION AT THE PORT OF NEW YORK, Respond-ent.**

United States District Court
S. D. New York.
July 19, 1956.

Ira Gollobin, New York City, for relator.

Paul W. Williams, U. S. Atty., New York City, for respondent, Harold J. Raby and Roy Babitt, New York City, of counsel.

WEINFELD, District Judge.

The relator brings this habeas corpus proceeding to test the Attorney General's denial of his applications (1) for suspension of an order for his deportation [1] and (2) for the withholding of his deportation to Greece where the relator asserts he would be subject to physical persecution.[2]

Petitioner, a native of Turkey and a citizen of Greece, entered the United States on August 21, 1948 when he was admitted as an alien seaman for a maximum 29-day period. He has remained since without permission and there appears to be no question as to his deportability. Petitioner married a citizen of the United States and there are two native born children of the marriage.

Deportation proceedings were instituted in April, 1951 but were abandoned. In March, 1956 proceedings were commenced de novo and petitioner then applied for suspension of deportation and voluntary departure which was denied, and he was ordered deported on the warrant charge.

On May 17, 1956, upon the dismissal of his appeal from the order of deportation by the Board of Immigration Appeals, petitioner was notified that a hearing on his application [3] for a stay under § 243(h) would be held on May 22, 1956. Upon the return day his attorney's request for one month's adjournment to enable him to secure material witnesses was denied. The hearings commenced and were continued on June 4th and 6th; renewed requests for continuance were refused.

Petitioner testified and also submitted documentary evidence. He testified that following his release from the Greek navy after the war he publicly urged upon the governmental authorities there a program of assistance for veterans; that he denounced the economic and living conditions in Greece and as a trade unionist urged reforms; that the Greek authorities have arrested and deported many persons, not because of the commission of crimes, but because of their advocacy of improved economic and living conditions for veterans and workers; that he fled from Greece in April, 1947 to avoid arrest and banishment for his anti-government activities.

Petitioner was a member of the Federation of Greek Maritime Unions (O.E. N.O.) in Greece and he maintained membership therein in this country where he acted as its secretary. The organization was outlawed by the Greek government in 1947 and has been cited by the Attorney General within the purview of Executive Order No. 10450.[4] The petitioner testified that many members of the O.E.N.O. and others opposed to the Greek government have been and continue to be persecuted and have been arrested by

---

1. Pursuant to § 244(a) (5) and (c) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1254(a) (5) and (c).

2. While the writ seeks relief upon both grounds, petitioner in his brief confined his attack to the denial of his application under § 243(h) of the Act, 8 U.S.C.A. § 1253(h).

3. Filed on May 7, 1956 during the pendency of the deportation proceeding.

4. 5 U.S.C.A. § 631 note.

authorities without legal process, detained, and condemned to death or exiled to foreign places; in particular, he cited the instance of a member of the O.E.N.O. who had been deported to Greece, was arrested, thrown into prison, tortured and then exiled, and that of other and more active members who met similar fates. In sum, he testified that because of his well-known activities in opposition to the government, his signing many petitions in this country directed against the government, his active participation as an officer in the affairs of O.E.N.O., he would face physical persecution if deported to Greece.

In addition to his oral evidence, petitioner also submitted, as the hearing officer stated upon the conclusion of the hearing, "much documentation" from various sources including "resolutions and statements of labor organizations in the United States, foreign and domestic news releases, articles from periodicals, copies of proceedings in court and Congress, communications from England in his behalf, as well as other material. Some of the documentation complains of trials, convictions, exiling, executions and unconstitutional laws and activities in Greece, that trade unionists are persecuted, that liberties are violated, that there are camps for political exiles, that there are punishments without charges, that Greek places of confinement were not in proper condition, and that improper activities take place in that country."

The documentary evidence included a statement by an English barrister and former Member of Parliament who asserts that he is familiar with conditions in Greece and the attitude of its government towards those who hold membership in O.E.N.O., and those who oppose the government, and that in his view the petitioner if deported would be subject to political exile to one or more of the prison camps or worse.

No countervailing evidence was offered by the Government. At the conclusion of the hearing a final request for a continuance to secure the testimony of witnesses who allegedly would substantiate the petitioner's claim of physical persecution in Greece was denied. Immediately following such denial the inquiry officer decided the matter adversely to the petitioner and found that on the evidence of record he would not be subject to physical persecution if deported.

Nonetheless, the evidence presented was of such a nature that the hearing officer recognized that petitioner might well be subject to prosecution if returned to Greece for alleged offenses against that government but felt there was no basis upon which to conclude that petitioner would be denied due process of law or a fair trial and hearing since Greece is a democratic country.

The witnesses, with respect to whose testimony the continuance was sought and refused, included an attorney who was then daily engaged in a protracted Smith Act trial in this Court and who had submitted an affidavit of willingness to testify upon personal knowledge of conditions in Greece as a result of travel and study there, but requested that his appearance be deferred until the conclusion of his professional engagement. Another witness was a teacher at a Southern school who likewise professed personal familiarity with prevalent conditions in Greece and who it was indicated would be available to testify within ten days thereafter.

Petitioner, amongst other matters, contends that the refusal to grant his request for a reasonable and short adjournment to obtain the testimony of these and other witnesses deprived him of his right to present evidence of material import to support his plea.

■■■ Section 243(h) of the Immigration and Nationality Act authorizes the Attorney General to withhold the deportation of an alien to any country whenever in his opinion the alien would be subject to physical persecution in that country. The section, as a result of its amendment in 1952, vests the staying of such deportation in the administrative judgment of the Attorney General and his decision as to what action a foreign country may take

with respect to a deportee has been equated to a political determination as to which the Courts should not intrude.[5] But broad as the Attorney General's power is under § 243(h), it is not unrestricted; it is still subject to review by the Courts although the area of review falls within a narrow compass. The Courts may intervene if it appears that the Attorney General or his designee has denied an alien seeking relief the opportunity to present evidence to support his plea or has refused to consider the evidence presented by him, or where the requirements of appropriate procedural due process have not been observed.[6]

The proferred evidence of the two witnesses with respect to whose oral testimony a continuance of the hearing was unsuccessfully sought would have constituted the only direct evidence of actual conditions in Greece. Petitioner's testimony as to conditions subsequent to 1947 when he left Greece was obviously not based on personal knowledge. The documentary evidence which he offered in support of his plea in the main consists of resolutions of various labor organizations in the United States and other groups, and it would be unrealistic not to recognize that in some instances these were politically motivated. Since petitioner was a witness deeply interested in the outcome of the proceeding and the documentary proof, because of its political overtones, might readily be discounted, a trier of the facts would be free to appraise such evidence accordingly. On the other hand, the testimony of live witnesses who knew conditions at first hand as a result of personal observation might well have been so compelling and forceful as to have persuaded the hearing examiner that there was merit to petitioner's plea; that in fact he faced physical persecution.

Whether the direct evidence of the proposed witnesses and an appraisal of their demeanor would have resulted in a different recommendation by the hearing examiner cannot be stated but it does seem to me that in a matter involving not only physical persecution but life itself, as petitioner contends, he was entitled to have the best available evidence considered and the request for the short adjournment should have been granted; especially so in the light of the fact that for over five years, since the abandonment of the original proceeding, the Government took no action to enforce petitioner's deportation. Why a forthwith termination of the hearing after an inordinate delay of five years became of greater consequence than a short postponement which would have enabled petitioner as permitted by the regulations "to submit any evidence in support of his claim which he believes should be considered by the special inquiry officer"[7] is not clear upon this record.

 Under all the circumstances I hold that the refusal to grant a continuance to secure the testimony of these and other witnesses was a denial of a full and fair opportunity to petitioner to present relevant and important evidence in support of his application. Accordingly, the writ is sustained unless, within a time to be fixed in the order to be entered, the proceeding is reopened for the taking of the additional testimony so offered by petitioner and the presentation of further documentary proof.

This disposition makes it unnecessary to consider other contentions made by petitioner.

Settle order on notice within five days from the date hereof.

---

5. United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392.

6. United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316; 

United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392.

7. 8 C.F.R. § 243.3(b) (2).