Alfred Dodge LU, Plaintiff,

v.

William P. ROGERS, the Attorney General, Defendant.

Civ. A. 3766-56.

United States District Court
District of Columbia.

March 31, 1958.

Jack Wasserman, Washington, D. C., for plaintiff.

Oliver Gasch, U. S. Atty., Washington, D. C., for defendant.

McGARRAGHY, District Judge.

The plaintiff was born in Panama and is now a citizen of China. He last entered the United States at Miami, Florida, on June 8, 1948 and was admitted as a visitor. Subsequently his status was changed to that of a student, but he has since discontinued his studies in the United States. In 1951 plaintiff applied for adjustment of his status under Section 4 of the Displaced Persons Act of 1948, as amended, 50 U.S.C.A.Appendix, § 1953. This petition was denied upon the ground that he could return to the country of his birth without fear of persecution.

Deportation proceedings were instituted for plaintiff and after a hearing, the Special Inquiry Officer found him subject to deportation under Section 241(a) (9) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (9). The ruling was appealed and on August 12, 1955, the Board of Immigration Appeals concluded that plaintiff should be granted voluntary departure.

On October 17, 1955 plaintiff was notified to make arrangements for his departure; otherwise, he would be deported.

This suit was filed under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, to review the order of the Immigration Service. Plaintiff has abandoned his first cause of action which relates to the fear of persecution if deported to the mainland of China. In the second cause of action, plaintiff seeks to prevent his deportation on the ground that the order of deportation entered against him does not specify the place of deportation and that no travel documents have been secured for him. This issue is the only one for determination by the Court.

Plaintiff admittedly is deportable but contends that under 243(a) of the Act, 8 U.S.C.A. § 1253(a), inquiry must be made of the proposed receiving country and it must reply that it is willing to accept the alien. The government, on the other hand, says that it would be fruitless in a case such as this to send inquiry to the mainland of China because it doubtless would be ignored. However, they propose to ship the plaintiff to the border of China and tender him to the Chinese with the hope that they will be willing to accept him. If they are unwilling to accept him, then he will be returned to the United States, presumably to be deported elsewhere.

The government's position is stated in its trial memorandum as follows:

"＊ ＊ ＊ The United States government maintains no diplomatic relations with the government in control of the mainland of China, and can never be sure that China will accept an alien until the alien is actually presented at its border. On the basis of its past experiences in cases of this kind the Service has every reason to believe that China is willing to accept plaintiff who is admittedly a native thereof. Accordingly, it will, in line with its usual procedure for returning Chinese illegally in this country to the mainland of China, secure from the British Consulate a transit visa granting plaintiff permission to travel through Hong Kong on his way to the Chinese mainland. Should plaintiff not be accepted upon reaching the boundary line of the Chinese Peoples Republic he will be returned to the United States, pursuant to the agreement of the Immigration Service with the British authorities at Hong Kong and the transportation line."

Title 8 U.S.C.A. § 1253(a) is entitled: "Countries to which aliens shall be deported—*Acceptance by designated country; deportation upon nonacceptance by country*"—(italics supplied)—and reads as follows:

"(a) The deportation of an alien in the United States provided for in this chapter, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. *Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion* and without necessarily giving any priority or preference because of their order herein set forth ＊ ＊ ＊." (Italics supplied.)

In the opinion of the Court, the statute requires a determination that the country to which the alien is to be sent is willing to accept him. It seems clear that this determination must be made prior to the time of the deportation, otherwise the words "willing to accept him" would be superfluous. Moreover, the legislative history of the Act shows that Congress was aware of an alien designating or being a citizen of an "iron curtain" country which would ignore any inquiry made by this country. Therefore, it put in the time provision for receiving a reply and provided for an alternative procedure. (See Joint Hear-

ings Before the Committees on the Judiciary, Congress of the United States, Eighty-Second Congress, First Session, on S. 716, H.R. 2379 and H.R. 2816, pages 714 and 715).

Accordingly, the Court is of the opinion that, without communist China's expression of "willingness to accept him", the statute will not permit plaintiff's deportation to that country.

The defendant will be restrained from apprehending and deporting the plaintiff unless prior expression of willingness to accept him has been received from communist China to which it is proposed to deport him.

Counsel for plaintiff will submit proposed findings of fact, conclusions of law and judgment.