UNITED STATES of America ex rel.
WONG KAN WONG, Relator,

v.

P. A. ESPERDY, as District Director of
the Immigration Service for the District
of New York, or such person, if any,
who may have the said Wong Kan
Wong in custody, Respondent.

United States District Court
S. D. New York.

Sept. 8, 1961.

Abraham Lebenkoff, New York City,
for relator.

Robert M. Morgenthau, U. S. Atty.,
Roy Babitt, Sp. Asst. U. S. Atty., New
York City, for respondent.

LEVET, District Judge.

Relator is detained by respondent under Section 242(c) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252 (c), and applicable regulations 8 C.F.R. (1958 Ed.), Section 243.3(a), for the purpose of effecting his departure from the United States pursuant to an order of the Attorney General that he be deported.

Relator was ordered deported on July 25, 1961 following a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service.

Relator is a native and citizen of China, who entered the United States at New York, N. Y. on or about February 23, 1961 as a crewman.

At the time of the hearing above mentioned the Special Inquiry Officer concluded that relator was subject to deportation as an alien who was in the United States in violation of law. At the hearing, relator designated the mainland of China as the country to which he wished to be sent in the event he were ordered deported.

Subsequently, a Supervisory Deportation Officer communicated with Francis J. Noble in Hong Kong, Immigration Officer there. Mr. Noble was advised that relator had designated the mainland as the place to which he wished to be sent, and accordingly Mr. Noble was requested to confer with appropriate authorities in Hong Kong to ascertain whether upon relator's arrival there deportation could be completed to the mainland of China.

Mr. Noble advised subsequently by cable that the Director of Immigration

for the Hong Kong government had confirmed that upon relator's arrival in possession of Hong Kong documentation, deportation to the mainland of China could be completed.

The government contends that relator possesses proper documentation for entering into Hong Kong en route to the mainland of China in accordance with the designation of country authorized by Section 243(a) of the Act, 8 U.S.C.A. § 1253 (a).

The respondent allegedly advised relator that pursuant to the order of deportation and Section 243 of the Act, relator's deportation to the mainland of China, in accordance with his election, was directed, and further advised relator that in the event the government occupying the mainland of China should not permit relator entry, he would be returned to the United States without expense.

The relator contends that since he designated the mainland of China, deportation cannot be effected there because respondent has not inquired of that government as to whether it will accept relator into its territory. The relator thus argues that this inquiry by the respondent is demanded by the Act and that, therefore, since it cannot be done because we do not maintain diplomatic relations with the mainland government, relator cannot be deported and, therefore, there is no basis for holding him in custody.

Section 243(a) of the Act, 8 U.S.C.A. § 1253(a), is as follows:

"§ 1253. Countries to which aliens shall be deported—Acceptance by designated country; deportation upon nonacceptance by country

"(a) The deportation of an alien in the United States provided for in this chapter, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—

"(1) to the country from which such alien last entered the United States;

"(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

"(3) to the country in which he was born;

"(4) to the country in which the place of his birth is situated at the time he is ordered deported;

"(5) to any country in which he resided prior to entering the country from which he entered the United States;

"(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or

"(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

Relator relies upon the decision of the Second Circuit in United States ex rel. Tom Man v. Murff, 2 Cir., 1959, 264 F.2d 926.

In the Man case, the relator was born in China and last entered the United States in 1925 as a seaman upon a British ship. Concededly, he was subject to deportation for having long overstayed the time permissible to a seaman who leaves the ship. Deportation proceedings were begun against him in 1952, and in 1954 he was found subject to deportation and a warrant issued under Section 243(a) of the Immigration and Nationality Act (Section 1253(a) of Title 8 U.S.C.A.). The relator thereupon specified Formosa as the "country" to which he wished to be deported, and the Attorney General applied to the National Chinese Government to "accept" him. That government, however, refused to do so, whereupon the Attorney General directed him to be sent to "China," which meant "the mainland of China." In the district court, Judge Dimock held that, although there was no proof that the relator would have been subject to "physical persecution" on the mainland of China, the Act did not permit deportation to China since the Attorney General had not inquired of the Communist Government of China whether it was willing to "accept" the relator.

Under these circumstances, the appellate court seems to have concluded that a preliminary inquiry was necessary as a condition upon which acceptance could be predicated. Judge Hand, who wrote the opinion, stated, among other things:

"* * * We cannot see any reason to suppose that the necessary consent in such situations should not follow the pattern laid down earlier in the section; and moreover it would be to the last degree cumbersome and oppressive to shuttle an alien back and forth on the chance of his acceptance, when it was possible to ascertain the truth in advance by inquiry." 264 F.2d at page 928.

In Lu v. Rogers, D.C.D.C.1958, 164 F. Supp. 320, Judge McGarraghy in a somewhat similar case to the present, stated:

"In the opinion of the Court, the statute requires a determination that the country to which the alien is to be sent is willing to accept him. It seems clear that this determination must be made prior to the time of the deportation, otherwise the words 'willing to accept him' would be superfluous. Moreover, the legislative history of the Act shows that Congress was aware of an alien designating or being a citizen of an 'iron curtain' country which would ignore any inquiry made by this country. Therefore, it put in the time provision for receiving a reply and provided for an alternative procedure. (See Joint Hearings Before the Committees on the Judiciary, Congress of the United States, Eighty-Second Congress, First Session, on S. 716, H.R. 2379 and H.R. 2816, pages 714 and 715).

"Accordingly, the Court is of the opinion that, without communist China's expression of 'willingness to accept him', the statute will not permit plaintiff's deportation to that country." 164 F.Supp. at pages 321–322.

This decision was affirmed on December 30, 1958 in a per curiam opinion by the United States Court of Appeals for the District of Columbia Circuit, 104 U.S. App.D.C. 374, 262 F.2d 471.

The Court of Appeals for the Second Circuit has declared that Section 243(a)

(7), in authorizing deportation "to any country which is willing to accept such alien into its territory" is obviously intended to avoid arbitrary restrictions on the places to which a deportable alien may be sent and that this is in line with the general Congressional policy of facilitating the deportation of deportable aliens. Chan Chuen v. Esperdy, 2 Cir., 1960, 285 F.2d 353, 354.

The respondent contends that the terms of the section (Title 8 U.S.C.A. § 1253 (a)) do not require inquiry by the Attorney General of the government of China, at least in advance, under the circumstances of this case. The alien elects to go to China (on the mainland), which is the country of his birth (see subdivision (3)), the country in which the place of his birth is situated at the time he was ordered deported (subdivision (4)).

No diplomatic relations directly exist with the mainland of China. However, the respondent communicated with an immigration official (of the United States) in Hong Kong, who advised respondent that deportation to the mainland could be completed upon relator's arrival in Hong Kong, but if denied admission to the mainland he would be returned to the United States, presumably at the expense of this government.

It has been stated by the court in United States ex rel. Hudak v. Uhl, D.C.N.D. N.Y.1937, 20 F.Supp. 928, affirmed 2 Cir., 1938, 96 F.2d 1023:

"It will be presumed in every case of deportation that the United States immigration authorities have obtained the consent of the native sovereignty to receive the deported alien.

"Should it prove otherwise, the alien will undoubtedly be returned to the United States and the latter again be faced with the problem of ridding itself of the alien, presumed to be undesirable because of his unlawful entry." 20 F.Supp. at page 929.

However, here it is obvious that no direct affirmative consent has been provided to accept relator.

In this case, the United States maintains no diplomatic relations with the government in control of the mainland of China, and, therefore, may not be able to obtain advance consent through the usual diplomatic channels. It is, therefore, the respondent urges, necessary to send relator to the mainland and then apply for his admission to the border upon his arrival there.

Since the relator wishes to go to the mainland of China, the government now seeks to facilitate his choice. The reasons in the Tom Man case, supra, perhaps do not apply fully here since there the relator did not wish to go to the mainland but to Formosa, which declined admission.

■ The statute, if possible, should be construed so as to effectuate the purposes intended by the legislature and avoid consequences which would completely frustrate that intention. Lau Ow Bew v. United States, 1892, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; United States v. Katz, 1926, 271 U.S. 354, 357, 46 S.Ct. 513, 70 L.Ed. 986. However, the situation here would seem to be one in which legislative augmentation by Congress may be necessary since in situations where there is a requirement in a statute which has the effect of frustrating the purpose of the legislature, this is a problem of legislative revision.

■ Notwithstanding the reasoning presented by the respondent, in view of the decision in the Man case and the Lu case, I am constrained to conclude that the determination as to whether the country to which the alien is to be sent is willing to accept him must be made prior to the time of the deportation. I, therefore, hold that unless and until respondent makes preliminary inquiry and within the statutory period receives an expression of a "willingness to accept," the relator may not be deported to the mainland of China. Thus, I hold that this preliminary inquiry is a condition which must precede the acceptance required in the case of the "country" of the alien's choice.

As Judge Dimock stated in United States ex rel. Scala Di Felice v. Shaugh-

nessy, D.C.S.D.N.Y.1953, 114 F.Supp. 791, 795:

"Since relators are clearly deportable, they cannot be unconditionally released. United States ex rel. Wiczynski v. Shaughnessy, 2 Cir., 185 F.2d 347, 349, supra. The procedure indicated by the court of appeals in United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 187 F. 2d 137, 142, affirmed 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586, supra, appears to be that the writ should be held in abeyance pending action by the Attorney General in conformity with the court's opinion."

Settle order on notice.