**HOM SIN, Plaintiff,**

v.

**P. A. ESPERDY, District Director of Immigration and Naturalization for the District of New York, Defendant.**

United States District Court
S. D. New York.

Sept. 27, 1962.

Benjamin Gim, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., for the S. D. of New York, for defendant; Roy Babitt, Sp. Asst. U. S. Atty., S. D. of New York, of counsel.

METZNER, District Judge.

Defendant moves for summary judgment in this action for a declaratory judgment seeking to review an order of the District Director of the Immigration and Naturalization Service directing the deportation of plaintiff to Hong Kong pursuant to a warrant of deportation.

Plaintiff is a Chinese crewman who overstayed his shore leave permit. He was apprehended and given a hearing which resulted in an order of deportation. Plaintiff admittedly is deportable. At his hearing plaintiff designated the mainland of China as the "country" to which he desires to be deported. Concededly, defendant made no inquiry of the authorities on the mainland of China to determine if the latter would accept plaintiff.

Inquiry, however, was made of the Nationalist Chinese Government on Formosa, which this country recognizes as the government of China, as to whether it would admit plaintiff. After a negative answer to this request was received, inquiry was made of the authorities in Hong Kong, who authorized entry there. These inquiries were made pursuant to the procedures set forth in section 243(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1253(a) ), which must be followed by the Attorney General in effecting the deportation of an alien. Step No. 1 of section 243(a) provides that the alien shall be deported to a country designated by him if that country is willing to accept him. If the alien fails to make a designation or if he does so and the designated country fails to advise that it will accept him into its territory, then the Attorney General must take Step No. 2. Step No. 2 contemplates the deportation of an alien to the country of which he is a subject

national or citizen if such country is willing to accept him. If such country fails to advise that it will accept him, then deportation shall be effected as provided by Step No. 3. Step No. 3 allows for deportation to any one of seven categories of countries within the discretion of the Attorney General.

After receipt of the acceptance from Hong Kong, defendant notified plaintiff that he would be given ninety days within which to obtain acceptance of his entry into the China mainland pursuant to Step 1 of the procedures, in default of which he would be deported to Hong Kong. Plaintiff admittedly made no effort to gain admission to the mainland. At the expiration of the ninety-day period, an order of deportation to Hong Kong was issued, and it is this order which plaintiff seeks to have reviewed.

The issue presented is whether under section 243(a) the government is obliged to make inquiry of the country designated by the alien, as to his acceptability for deportation to that country, or whether the government may impose that burden upon the alien. The pertinent portions of section 243(a) read as follows:

"The deportation of an alien in the United States provided for in this chapter * * * shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory * * *. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded."

The mainland of China is considered a country for purposes of section 243(a). United States ex rel. Leong Choy Moon v. Shaughnessy, 218 F.2d 316 (2d Cir. 1954).

Our government does not "recognize" the authorities on the mainland as the government of China and states that it is unable to communicate with them. However, the statute contemplates communication prior to deportation because deportation may not be effected unless the country "is willing to accept him into its territory". United States ex rel. Tom Man v. Murff, 264 F.2d 926 (2d Cir. 1959); Lu v. Rogers, 164 F.Supp. 320 (D.D.C. 1958), aff'd, 104 U.S.App.D.C. 374, 262 F.2d 471 (D.C.Cir. 1958); see United States ex rel. Leong Choy Moon v. Shaughnessy, supra, 218 F.2d at 319.

In both the Lu and Man cases, supra, the alien did not wish to go to the China mainland, but that country was designated as the destination of the alien by the Attorney General without first having obtained the consent of the authorities on the mainland. The orders were found invalid on the ground that acceptance from the mainland was a necessary prerequisite to deportation. These decisions were made despite the argument that our government does not recognize the authorities on the mainland and that to compel inquiry would be "to invade the prerogative of the Executive Department by compelling it to do something that would, or might be, deemed a 'recognition of' the Communist Government." United States ex rel. Tom Man v. Murff, supra, 264 F.2d at 928. The court answered this argument by stating:

"Nor can we agree that it would be any greater 'recognition' of the *de facto* government of China to secure his acceptance after a preliminary inquiry, than to do so without any inquiry." 264 F.2d at 928.

In United States ex rel. Wong Kan Wong v. Esperdy, 197 F.Supp. 914 (S. D.N.Y.1961), the alien had designated the China mainland as the country to which he wished to be sent in the event that he were ordered deported. Again, the government was faced with its policy of "nonrecognition" and arranged for the authorities in Hong Kong to accept the alien and transport him to the mainland of China. This was done to facilitate deportation to the country designated by the alien. There is no

showing that the Hong Kong authorities communicated with the authorities on the mainland and received the latter's acceptance. In fact, it appears that there was no communication because the order of deportation provided that in the event the alien was not permitted to enter the mainland, he would be returned to the United States without expense. The alien protested this deportation on the ground that inquiry had not been made by this government of the authorities on the mainland to determine whether they would accept the alien into that territory. The government contended that the method it adopted was the only way by which the alien could be admitted to the country. In the face of this argument the court sustained the alien's contention, stating:

"[T]he determination as to whether the country to which the alien is to be sent is willing to accept him must be made prior to the time of the deportation. I, therefore, hold that unless and until respondent [the government] makes preliminary inquiry and within the statutory period receives an expression of a 'willingness to accept,' the relator may not be deported to the mainland of China." 197 F.Supp. at 917.

The whole question of effecting the deportation of Chinese, admittedly deportable, has presented quite a problem. At one time they objected to deportation to Hong Kong on the ground that once they arrived there they would be "dumped" into Communist China. When this defense to deportation was overruled (Chong Chak v. Murff, 172 F.Supp. 150 (S.D.N.Y.1958) ) they then argued that despite an intense desire not to be sent to Communist China, of which they claimed to be nationals, the government should first make inquiry of that country before they could be deported to some other country (see Step 2 above). This defense was overruled. Chu Lam v. Esperdy, 209 F.Supp. 1, S.D.N.Y., 1962; Ng Kam Fook v. Esperdy, 209 F.Supp. 637, S.D.N.Y., 1962; Leong Leun Do v. Esperdy, 197 F.Supp. 604 (S.D.N.Y. 1961). Now they designate Communist China as the place to which they want to go, knowing full well the government's position that it cannot make the inquiry required by the courts.

Here, as in the Wong case, supra, the government makes the "facilitation" argument, that by giving the alien the right to attempt to gain his own admission it was aiding him in achieving his desire. For example, it argues that the alien could go to the Indian consulate here in New York and have the inquiry made through that diplomatic channel. But if that is true cannot the government do the same thing without creating the possibility of "recognition"? This does not go as far as suggested in the Man case, supra. The government admits that it must use other countries to effect deportation to China, and in cases where diplomatic relations have been severed with countries such as Cuba we use the diplomatic facilities of other countries to represent our interests.

Neither the statute nor its legislative history indicates that this burden should be placed upon the alien. In fact, it would appear that just the opposite is true. The initial drafts of the act expressly permitted the alien to make the inquiry of the country that he designated, but this provision was omitted from the statute as passed. S. 2550, 82d Cong., 2d Sess., § 243(a) (1952); H.R. 5678, 82d Cong., 2d Sess., § 243(a) (1952), U. S. Code Congressional and Administrative News, p. 1653.

Furthermore, it should be noted that the portion of the section under consideration reads "If the government of the country designated by the alien fails finally to advise the Attorney General * * *" while a latter portion of the same section, referring to deportation of the alien to a country of which he is a subject national or citizen, reads "If the government of such country fails finally to advise the Attorney General or the alien * * *." (Emphasis supplied). Since the advice will go from the foreign government to the one who has commun-

icated with it, the implication is that in Step 2 the alien may communicate with the foreign government. The difference in wording between two parts of the same section plainly implies that the alien may not inquire where he has made the designation.

The court understands the predicament of the government, which is trying to deport admittedly deportable aliens. However, such procedures have been specifically defined by Congress, although obviously it never contemplated the problem presented by this and related cases. Under the statute and the decisions interpreting it, I am constrained to deny defendant's motion. To hold otherwise would require judicial legislation.

So ordered.