**LAM TAT SIN, Plaintiff-Appellant,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service, New York District, Defendant-Appellee.**

No. 467, Docket 28816.

United States Court of Appeals Second Circuit.

Argued April 16, 1964.

Decided July 13, 1964.

Certiorari Denied Nov. 9, 1964.

See 85 S.Ct. 190.

Lebenkoff & Coven, New York City (Abraham Lebenkoff and Jules E. Coven, New York City, of counsel), for plaintiff-appellant.

Roy Babitt, Sp. Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, of counsel), for the United States of America.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff-appellant Lam Tat Sin brought this suit to review appellee's action in calling him to surrender for deportation to Hong Kong. He appeals from the district court's dismissal of his complaint and its award of summary judgment in favor of appellee.

Appellant, a citizen of the Republic of China on Formosa, arrived in the United

States as a crewman with Hong Kong travel documents in January, 1962. He remained here beyond the period of his shore leave and in May, 1962, became the subject of deportation proceedings. At the hearing before the Special Inquiry Officer, appellant did not challenge his deportability and pursuant to Section 243(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(a) [1] designated the mainland of China as the place to which he wished to be sent. Accordingly, the Special Inquiry Officer on May 9, 1962 ordered appellant deported to that country, but, as an alternative if deportation could not be effected there, then to the Republic of China on Formosa and as a second alternative to Hong Kong. Appellant did not appeal from this order.

On February 21, 1963, when informed by an Immigrant Inspector that it was expected that a travel document would be issued by the government on the Chinese mainland, appellant re-affirmed his original preference for deportation to the mainland. By May 6, 1963, the formal consent for the return of appellant and two other aliens had been obtained from the government on the mainland. However, when appellant was told in October, 1963 that his deportation was imminent, he moved to have the Attorney General withhold expulsion under 8 U.S.C.A. § 1253(h) and to re-open the deportation proceeding alleging that he would be physically persecuted on the Chinese mainland because of his unwillingness to accept Communist rule. The Special Inquiry Officer held that appellant's application constituted a withdrawal of designation and that the application for withholding of deportation to the Chinese mainland had thus become moot. He denied the motion but resettled the order to provide for deportation to the Republic of China on Formosa, which earlier had refused to accept appellant, and in the alternative, to Hong Kong. Appellant does not challenge any aspect of the proceedings before the Special Inquiry Officer.

Appellant's argument focuses on an Executive policy determination to withhold involuntary deportations of Chinese aliens to the Far East. Appellee does not dispute the existence of "a general political policy of the Attorney General of forbearance, at present, from enforcing expulsion of Chinese to Hong Kong," but urges that the Attorney General is

---

1. Section 243(a), 8 U.S.C.A. § 1253 provides in part:

"(a) The deportation of an alien in the United States provided for in this chapter, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—

\*    \*    \*    \*    \*

"(5) to any country in which he resided prior to entering the country from which he entered the United States;"

not barred from determining that a specific class of aliens should not be beneficiaries of this "broad act of administrative grace." Appellee emphasizes that there is no statute, executive order or regulation embodying this general policy and that the policy itself does not purport to set out rigid guide lines.

■ The district court found that the reason for staying the deportation of aliens to Hong Kong is to lessen refugee pressure in that area of Asia, where the influx of refugees from the mainland of China is acute, and in furtherance of that goal the Attorney General need not stay all orders but may distinguish between orders on any reasonable basis. The court held that "the degree of good faith the alien exhibits in his dealings with the Government is one such reasonable basis." We agree.

Underlying the Attorney General's determination that appellant should be removed from the United States is the history of section 243(a) of the Immigration and Nationality Act in the courts. In United States ex rel. Tom Man v. Murff, 264 F.2d 926 (2d Cir. 1959), this court held that before an alien might be deported, the consent of the receiving country must be procured. See also Lu v. Rogers, 164 F.Supp. 320 (D.D.C.1958), aff'd, 104 U.S.App.D.C. 374, 262 F.2d 471 (1958). Appellee contends that Chinese aliens, relying on the vitality of Tom Man, sought to avoid deportation by choosing the mainland of China, knowing this country did not communicate with, and thus could not gain the consent of, the mainland's Communist regime. See the discussion in Hom Sin v. Esperdy, 209 F.Supp. 3, 5 (S.D.N.Y.1962), which held that the United States Government could not avoid its political predicament by forcing the alien to make the inquiry

of the receiving country he had designated.

When appellant learned that our Government had obtained the consent of the Chinese (mainland) government, which he had only recently insisted was his choice, he exhibited a most sudden change of heart and mind. For the first time, he asserted to the Special Inquiry Officer: "I owe allegiance to the Nationalist Government of China * * *. I am opposed to Communism and would actively oppose any Communist authorities in any place in which I should be residing. * * * I am unwilling and afraid to return to my home in China because of fear of physical persecution on account of my political beliefs and my present unwillingness to accept Communist rule * * *." The Attorney General may have thought it significant that appellant sought to withdraw his designation on the basis of facts of which he hardly could have been unaware when originally designating the mainland.

■ Under all the circumstances disclosed, it would not have been unreasonable for the Attorney General to conclude that the mainland of China had been chosen here to ward off deportation indefinitely, that appellant had not acted in good faith and that he ought not to be rewarded by application of the informal general stay policy. Adoption of a policy of forbearance does not require the Attorney General to stay all deportation orders so long as the exceptions he draws are reasonable and are generally applicable. There is no proof that appellant was singled out for special adverse treatment. Upon all the facts, the Attorney General's denial was not arbitrary and without rational basis. See United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 490–491 (2d Cir. 1950).

Judgment affirmed.