**NIPPON EXPRESS U. S. A., INC. and Yoko Yokoyama, Plaintiffs,**

**v.**

**P. A. ESPERDY, District Director, Immigration and Naturalization Service, United States Department of Justice, Defendant.**

**No. 66 Civ. 2509.**

United States District Court
S. D. New York.

Nov. 22, 1966.

Whitman, Ransom & Coulson, New York City, for plaintiffs. Edith Lowenstein, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for the S. D. of New York, New York City, for defendant. Francis J. Lyons, Sp. Asst. U. S. Atty., of counsel.

## OPINION

McLEAN, District Judge.

This is an action for a declaratory judgment (28 U.S.C. § 2201) and for review under the Administrative Procedure Act (5 U.S.C. § 1009) of a decision of the District Director of the Immigration and Naturalization Service dated June 15, 1966, which denied an application made by plaintiff Nippon Express U.S.A., Inc. (Nippon) on behalf of plaintiff Yoko Yokoyama for continuation of her status as a "treaty trader" under a treaty between the United States and Japan dated April 2, 1953 ([1953] 4 U.S.T. & O.I.A. 2063).

Plaintiffs have moved for an order (1) setting aside defendant's decision; (2) ordering defendant to grant the application; and (3) enjoining defendant from initiating deportation proceedings against Yoko Yokoyama until the termination of this action.

The initial argument of this motion was limited to the application for a preliminary injunction restraining defendant from initiating deportation proceedings. Thereafter counsel for both parties asked the court to decide the entire case, there being no dispute of fact and no need for a hearing. In order to expedite a determination of this controversy for the convenience of both parties, I undertook to do this. Accordingly, I will treat the case as though both parties had moved for summary judgment.

The facts may be briefly summarized as follows:

Miss Yokoyama is a Japanese national. She first came to the United States in November 1959 as a visitor. In February 1960, her status was changed to that of a student. She took courses at the Art Students League in New York.

Thereafter she accepted employment with Transcontinental Mercantile Corp. (Transcontinental) as purchasing agent of women's apparel for export to Japan. On January 6, 1965 she applied to the Immigration and Naturalization Service for reclassification to the status of nonimmigrant treaty trader under Section 101(a) (15) (E) of the Immigration and Nationality Act (8 U.S.C. § 1101(a) (15) (A)). This application was granted on January 28, 1965. Her temporary stay in the United States as a treaty trader was subsequently extended to October 8, 1966.

On April 1, 1966, Nippon, a New York subsidiary of a Japanese express company, wrote to the Immigration and Naturalization Service stating that it wished to employ Miss Yokoyama as a bookkeeper. The letter stated:

"We have been looking for a qualified individual with equal linguistic ability as well as accounting background. Due to the Nature of our business, it is necessary for her to have adequate knowledge of the Japanese and English language since she will be communicating with the home office as well as answer phones."

The letter concluded:

"Miss Yokoyama's present status is that of a Treaty Trader to work for Transcontinental Mercantile Corp. and is valid until October 8, 1966. We respectfully request your changing Miss Yokoyama's employer from Transcontinental Mercantile Corp. to Nippon Express."

The District Director treated this letter as an application on behalf of Miss Yokoyama for continuation of her status as a treaty trader in her new employment. By letter dated June 15, 1966, addressed to Miss Yokoyama, the District Director denied the application. His letter pointed out that her first application for treaty trader status had been granted in order that Transcontinental could make use of her knowledge of textiles and fashion design. It stated that she had not established that she was a bookkeeper or accountant and that the description of her proposed employment "does not indicate that the company is to engage you in a capacity requiring special qualifications essential to your proposed employer's enterprise."

Both plaintiffs now claim that this decision was arbitrary and contrary to the treaty and to the regulations pertaining to the definition of a treaty trader under that treaty.[1]

Before considering the merits of this controversy, a preliminary question of jurisdiction must be decided. Under 8 U.S.C. § 1105a(a), the Court of Appeals has sole and exclusive jurisdiction to review "all final orders of deportation" made against aliens pursuant to administrative proceedings before a special inquiry officer as prescribed in the Act (8 U.S.C. § 1252(b)). Courts of Appeals in other circuits are in conflict as to the effect of this statute upon the jurisdiction of the district court to en-

tertain an action such as this. The Seventh Circuit has held that a decision of the Immigration and Naturalization Service prior to deportation proceedings which determines the alien's status, may be reviewed by the Court of Appeals in passing upon a final order of deportation and that consequently, the District Court has no power to review it in an independent action. Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (7th Cir. 1962), cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed. 2d 230 (1962). See Blagaic v. Flagg, 304 F.2d 623 (7th Cir. 1962).

The Court of Appeals for the Third and Fifth Circuits have held to the contrary. Scalzo v. Hurney, 314 F.2d 675 (3rd Cir. 1963); Samala v. Immigration and Naturalization Service, 336 F.2d 7 (5th Cir. 1964).

The Court of Appeals for the Second Circuit has not expressly spoken on the question. Cf. Lam Tit Sin v. Esperdy, 334 F.2d 999 (2d Cir. 1964), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed. 2d 176 (1964); Hitai v. Immigration and Naturalization Service, 343 F.2d 466 (2d Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965).

Faced with the necessity of choosing between two conflicting rules, neither of which is directly binding upon me, I will follow the view of the Third and Fifth Circuits, particularly since it seems to have some support in the Southern District of New York. Hom Sin v. Esperdy, 239 F.Supp. 903 (S.D.N.Y.1965); Maggiore Bakery, Inc. v. Esperdy, 238 F. Supp. 374 (S.D.N.Y.1964).

In so doing, I am motivated partly by considerations of fairness toward Miss Yokoyama under the present state of uncertainty as to the law on this point in this circuit. If I were to hold that this

---

1. The complaint alleges (Paragraph 9) that Nippon appealed from this decision to the Regional Commissioner who rejected the appeal on July 29, 1966. No record of any such appeal or decision is contained in the administrative file submitted to the court. Upon inquiry by the court of plaintiffs' attorney, she conceded that this allegation is incorrect. The error seems immaterial, however, for defendant says that no appeal was permissible under the regulations. Defendant admits that the decision of the District Director is final.

court does not have jurisdiction of her claim, and if subsequently, the Court of Appeals, in reviewing an order for her deportation, were to hold that it does not have jurisdiction either, she would fall between two stools, so to speak.

I turn, therefore, to a consideration of the merits.

8 U.S.C. § 1101(a) (15) provides that:

"The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens * * *

"(E) an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national * * * (i) solely to carry on substantial trade, principally between the United States and the foreign state of which he is a national; or (ii) solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital."

The language of the treaty does not shed much light upon the problem. The provisions to which the parties refer are:

"Article VII

"1. Nationals and companies of either Party shall be accorded national treatment with respect to engaging in all types of * * * business activities within the territories of the other Party * * *. Moreover, enterprises which they control * * * shall, in all that relates to the conduct of the activities thereof, be accorded treatment no less favorable than that accorded like enterprises controlled by nationals and companies of such other Party."

"Article VIII

"1. Nationals and companies of either Party shall be permitted to engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice. Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of a profession within the territories of such other Party, for the particular purpose of making examinations, audits and technical investigations exclusively for, and rendering reports to, such nationals and companies in connection with the planning and operation of their enterprises, and enterprises in which they have a financial interest, within such territories."

"Article XXI

"4. Nationals of either Party admitted into the territories of the other Party for limited purposes shall not enjoy rights to engage in gainful occupations in contravention of limitations expressly imposed, according to law, as a condition of their admittance."

More important for present purposes is a State Department Regulation (22 C.F.R. § 41.40) which provides:

"(a) An alien shall be classifiable as a nonimmigrant treaty trader if he establishes to the satisfaction of the consular officer that he qualifies under the provisions of section 101(a) (15) (E) (i) of the Act and that: (1) He intends to depart from the United States upon the termination of his status; and (2) If he is employed by a foreign person or organization having the nationality of the treaty country which is engaged in substantial trade as contemplated by section 101(a) (15) (E) (i), he will be engaged in duties of a supervisory or executive character, or, if he is or will be employed in a minor capacity, he has special qualifications that will make his services essential to the efficient operation of the employer's enterprise and will not be employed solely in an unskilled manual capacity."

■ The Immigration and Naturalization Service has the responsibility for deciding whether the status of a non-immigrant alien may properly be changed, after his arrival in the United States, to that of a treaty trader in order to extend his stay in this country. There is no merit to plaintiffs' contention that the Japanese employer itself may confer that status upon any employee it chooses.

Miss Yokoyama does not claim to be a supervisory or executive employee. In her case the question narrows down to whether she has "special qualifications that will make her services essential to the efficient operation of the employer's enterprise." The District Director decided that Nippon's letter did not make a sufficient showing that Miss Yokoyama possessed such special qualifications. The question is whether his decision was arbitrary or capricious.

Miss Yokoyama had previously been granted treaty trader status while employed by Transcontinental on the strength of her representation that because of her art training she had special expertise in textile and fashion design. Her present work is totally different. She is now a bookkeeper. Nippon's letter, which is all the District Director had before him, does not even make clear that Miss Yokoyama has had any education or training in this field. It now appears, however, without contradiction, that in fact Miss Yokoyama did take a course in accounting in high school in Japan and that she worked in Japan as a bookkeeper for two years before coming to the United States.

■ Since this information was not disclosed to the District Director, it probably should not be considered now. But even if it is, I do not believe that the ability to keep books is a special qualification within the meaning of the regulation. It is, after all, a very simple skill, easily acquired. It is essentially a clerical job. If bookkeepers have special qualifications, so do typists, for it takes training to be able to type. If bookkeepers are essential to the efficient operation of an enterprise, so are typists, for a commercial business needs both. In my opinion, the treaty and the regulation implementing it did not contemplate that every bookkeeper and every typist would be entitled to treaty trader status. Their special skills are not special enough, and no one individual who possesses these limited skills is essential enough. There are many bookkeepers and many typists. They are not special or essential in the way that trained fashion designers are, for the very reason that there are so many more of them available.

See Article VIII of the treaty supra.

But, plaintiffs say, Miss Yokoyama can speak Japanese. That is what makes her qualifications special and her services essential. There are not many people in New York who can keep books in Japanese.

This is a plausible argument and I have weighed it carefully. I have concluded that it is unsound. We are concerned here with a treaty with Japan and with the status of Japanese nationals. By hypothesis, every applicant for treaty trader status under that treaty is Japanese and obviously is able to speak and write Japanese. If an employee who is otherwise not possessed of special qualifications and whose services are not otherwise essential becomes specially qualified and essential because he speaks and writes Japanese, then it follows that every Japanese employee (except manual laborers) of a qualified Japanese enterprise can be a treaty trader. There would then be little or no need for the regulation. It is not reasonable to construe the treaty and the regulation as broadly as this.[2]

In my opinion the decision of the District Director was correct on the facts that were given to him by plaintiffs. Even if the additional facts presented on this motion may properly be consider-

2. The decision of the District Director in Matter of N— S—, VII I. & N.Dec. 426 (1957) does not affect this conclusion.

The applicant there was a supervisory employee, an assistant manager of the enterprise.

ed, it cannot be said that his decision was arbitrary, capricious or illegal. It follows that plaintiffs' motion, including the motion for a preliminary injunction, must be denied. Summary judgment in favor of defendant dismissing the action is granted.

So ordered.