**LEONG LEUN DO a/k/a Wing Sang, Plaintiff,**

v.

**P. A. ESPERDY, District Director of Immigration and Naturalization for the District of New York, Defendant.**

United States District Court
S. D. New York.
Sept. 25, 1961.

Benjamin Gim, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, for defendant. Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

METZNER, District Judge.

Plaintiff instituted an action for declaratory judgment to review an order of the Immigration and Naturalization Service denying the plaintiff's application for adjustment of status under Section 6 of the Refugee Relief Act of 1953, as amended, 50 U.S.C.A.Appendix, § 1971d, and to review an order directing plaintiff's deportation to Hong Kong under Section 243(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253 (a). The defendant has moved for a summary judgment and the plaintiff prays that defendant's motion be denied and that judgment be awarded the plaintiff.

Plaintiff was born in China and left there in 1949 to go to the Dominican Republic, where he lived for some 11 months. While he was in the Dominican Republic, he obtained a certificate of good conduct which shows the plaintiff's residence in the Dominican Republic and that he was the holder of a personal identification card issued by the Dominican Republic as well as an Internal Revenue stamp issued by that government. In June of 1950 he came to this country under a three-month visitor's permit, which was issued upon his affidavit that he intended to remain in the United States for a short period of time to take care of matters involved in the estate of a deceased brother, that he had status in the Dominican Republic as a treaty merchant and that he had a re-entry permit to the Dominican Republic. Plaintiff also possessed a return airlines ticket to the Dominican Republic. When the plaintiff overstayed the period allowed by his visitor's permit, the Immigration Service ordered his deportation after a hearing. The appeal from this determination was dismissed by the Board of Immigration Appeals.

Plaintiff then applied for adjustment of his immigration status pursuant to Section 6 of the 1953 Refugee Relief Act, as amended. A finding was made that the plaintiff's last foreign residence was in the Dominican Republic and in view of the plaintiff's failure to show that he was unable to return to that country because of persecution or fear of persecution, the application for relief was denied.

Plaintiff failed to designate a country to which he desired to be deported. The Attorney General made inquiry of the Dominican Republic, the British visa office in Hong Kong and Formosa as to whether they would accept plaintiff in their territory. Formosa and the Dominican Republic refused such application, but Hong Kong indicated that the plaintiff would be permitted to enter that territory.

The first question presented by this motion is whether the last residence of the plaintiff, before entering this country, was the Dominican Republic. This involves a construction of Section 6 of the Refugee Relief Act of 1953, as

amended. The pertinent portion of that section reads as follows:

"Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion, or political opinion * * *."

There is no definition of the word "residence" in the Refugee Relief Act. However, Section 15 of that act (50 U.S.C.A. Appendix § 1971m) provides that except as otherwise expressly provided in the act all of the provisions of the Immigration and Nationality Act shall apply. Section 101(a) (33) of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1101(a) (33)) provides that

"The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."

On the basis of the length of time that plaintiff lived in the Dominican Republic, the indicia of residence which he obtained while there, the re-entry permit and return airplane ticket which he obtained before coming to this country as a visitor in 1950, and the announced intention of the purpose of his visit, I find the determination in the administrative proceedings that the Dominican Republic was plaintiff's last residence is sustained by substantial evidence.

■ The case of Chien Fan Chu v. Brownell, 1957, 101 U.S.App.D.C. 204, 247 F.2d 790, relied on by plaintiff, is clearly distinguishable on its facts. In that case the plaintiff went to Formosa from the mainland of China to await the issuance of his visa to come to the United States. He was unable to stay on the mainland because of the approach of the Communist forces. In the instant case, while plaintiff originally may have been forced out of the mainland for the same reason, it was never his intention, at least from the record, that the United States be his ultimate destination. Plaintiff went to the Dominican Republic for the purpose of establishing a business and all of the events that occurred up to the time that he overstayed his visitor's permit in this country establish the intention to create a residence there. While the statute (§ 101(a) (33), supra) states that intention is not to be considered in determining residence, I assume this means that the plaintiff cannot give evidence of his intention as to residence. It does not prevent the Government from showing intention on the part of the plaintiff to establish residence based on actions of the plaintiff.

■ The next question raised by this motion also involves an interpretation of Section 6. Plaintiff claims that he is a citizen and national of China, which was his last residence, but even assuming that he was last a resident of the Dominican Republic he is still entitled to the benefits of Section 6 because the Dominican Republic has refused permission for his return to that country.

An analogous situation was presented in the case of Cheng Lee King v. Carnahan, 9 Cir., 1958, 253 F.2d 893. There the plaintiff was born in China and was taken at an early age to Singapore, where he resided until 1939. Thereafter he left Singapore to work as a seaman and had never returned to Singapore or China. Plaintiff asserted that he was an anti-Communist and that his return to China would result in persecution. Singapore refused to take him back and there was no contention that he would face persecution there if he could return. The Ninth Circuit agreed with the interpretation of the Immigration Service that the words "unable to return to the country of his birth, or nationality, or last residence" are conjunctive, even though a literal reading shows them to be in the disjunctive. Thus, the plaintiff must show inability to return to all of the three possible places—of birth, nationality, or last residence. However, the court disagreed with the interpretation by the Immigration Service that the inability to return to all of these three countries

must be predicated on persecution or fear of persecution on account of race, religion or political opinion. The court said at page 895:

> "But it seems to this court, in view of the congressional history of the act, that the Congress did intend, not its literal disjunctive words, but generally the words in the conjunctive, but read in the light of 'able to go.'"

I cannot agree with the holding of the Ninth Circuit "in view of the congressional history of the act". It indeed may be unfortunate that plaintiff here is sort of a man without a country, and it may be that if Congress had thought of this problem plaintiff would not find himself in his present predicament. But Congress was quite precise when it allowed for adjustment of status because of inability to return to the country of birth, nationality, or last residence. The inability had to be based on persecution or fear of persecution on account of race, religion or political opinion. This is not the reason for the inability of plaintiff to return to the Dominican Republic. The fact that Congress realized that this was the only ground which would sustain an adjustment of status is found in the Senate Report on the 1954 amendment to the Refugee Relief Act of 1953. In that report the committee stated:

> "The committee has restored the language 'birth, or nationality, or last residence,' which is the language presently contained in section 6 of the Refugee Relief Act of 1953. The committee understands that this language has been construed by the Immigration and Naturalization Service to mean that if the applicant for adjustment is able to return to any such country without persecution or fear of persecution, he is not eligible for adjustment." 3 U.S. Code & Adm.News, 83rd Congress, 2d Session, 1954, 3688, 3692.

There can be no question of congressional intent in light of the reaffirmation of this language by Congress after actual notice of the administrative interpretation. Consequently, plaintiff is without basis for relief and the administrative order denying adjustment of status must be affirmed.

The last point presented is whether the district director has properly directed the deportation of plaintiff to Hong Kong. Section 243(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1253(a)) sets forth the procedures that must be followed by the Attorney General in effecting the deportation of an alien. Step No. 1 provides that the alien shall be deported to a country designated by him if that country is willing to accept him. Plaintiff here failed to make such designation. Step No. 2 contemplates the deportation of an alien to the country of which he is a subject national, or citizen, if such country is willing to accept him. If such country refuses to accept the alien, then deportation shall be effected as provided by Step No. 3. Step No. 3 allows for deportation to any one of 7 categories of countries within the discretion of the Attorney General.

Plaintiff argues that he is a native and citizen of China, and since he has never resided in Formosa, inquiry prior to deportation pursuant to Step 2 of the act must be made of the government on the mainland of China. Admittedly, this has not been done. Absent such inquiry plaintiff contends that deportation may not be effected pursuant to Step 3. The defendant takes the bald position that the government of China is found in Formosa, without citing relevant authority. Without going into the diplomatic niceties of the problem, it is sufficient answer to defendant's argument that both the Immigration Service and the courts have recognized the government on the mainland of China as a separate entity within the contemplation of the word "country" as used in Section 243(a). United States ex rel. Tom Man v. Murff, 2 Cir., 1959, 264 F.2d 926; United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 1954, 218

F.2d 316; Lu v. Rogers, D.C.1958, 164 F.Supp. 320.

In the Tom Man case, supra, the plaintiff did not want to go to China because of fear of physical persecution. Without passing upon the merits of this contention, the Court of Appeals held invalid an order directing deportation to the mainland of China on the ground that prior inquiry had not been made by the Immigration Service and notification of acceptance received in answer to such inquiry. To the same effect is the Lu case, supra. Thus, it appears that before deportation to the Chinese mainland can be effected in conformity with Step 2, the procedures must be strictly complied with, even against the contention that attempted compliance is a useless gesture (Lu case), or might involve a "recognition of" Communist China (Tom Man case).

█ Here the situation is different. No attempt is being made to deport plaintiff to the mainland. He has urged upon the Immigration Service that he is unable to return to the Chinese mainland because of fear of persecution on account of his political opinions. Obviously, it follows from this position that he has no desire to return to the mainland and would strongly resist any attempt to achieve this end. However, he now claims that his deportation to Hong Kong pursuant to Step 3 is void because no attempt was first made to effect his return to the mainland pursuant to Step 2. If a request were made of the government on the mainland and the answer were in the affirmative, the plaintiff would be in a position that he has been fighting for years to avoid. He would be worse off than he is now. If the answer were in the negative, plaintiff would be in the same position as he is now. I cannot believe that the argument which he now presses upon the court is serious, and if it is serious the court cannot take it seriously.

It may be that in the event of a favorable reply plaintiff might then initiate proceedings pursuant to Section 243(h) of the act (8 U.S.C.A. § 1253(h)) to pre-vent deportation to the mainland, again on the ground of fear of physical persecution. The board did not determine this ground on the application for adjustment of status, but confined its decision to the finding of fact that plaintiff was last a resident of the Dominican Republic. The most favorable result that plaintiff could obtain in such proceeding would be deportation, as now ordered. The court can see no reason for affording plaintiff additional time to stay in the country.

On the facts of this case the deportation order must be sustained.

Motion by defendant for summary judgment granted. Cross-motion by plaintiff for summary judgment denied.

So ordered.