William P. ROGERS, Attorney General of
the United States, Appellant

v.

CHENG FU SHENG and Lin Fu Mei,
Appellees.

No. 15487.

United States Court of Appeals
District of Columbia Circuit.

Argued April 1, 1960.

Decided June 10, 1960.

Mr. Harry T. Alexander, Asst. U. S.
Atty., for appellant. Messrs. Oliver
Gasch, U. S. Atty., Carl W. Belcher,
Asst. U. S. Atty., and Louis M. Kaplan,
Asst. U. S. Atty., at the time the brief
was filed, were on the brief for appellant.

Mr. David Carliner, Washington, D.
C., with whom Mr. Jack Wasserman,
Washington, D. C., was on the brief, for
appellees.

Before Mr. Justice REED, retired,* and
BAZELON and WASHINGTON, Circuit Judg-
es.

BAZELON, Circuit Judge.

The Attorney General appeals from
the District Court's entry of summary
judgment, on cross-motions, enjoining
the deportation of the alien appellees [1]
to Formosa on the ground that "the place
to which deportation may be ordered

---

* Sitting by designation pursuant to § 294
(a), Title 28 U.S.C.

1. The circumstances giving rise to the de-
portation order are set forth in the Dis-
trict Court's opinion, D.D.C.1959, 177 F.
Supp. 281, and in Cheng Fu Sheng v.
Barber, 9 Cir., 1959, 269 F.2d 497, where

appellees obtained the right to seek con-
gressional relief under § 6 of the Refugee
Relief Act. 67 Stat. 403 (1953), 50 U.S.
C.A.Appendix § 1971d. Congress subse-
quently refused to grant them permanent
residence. 105 Cong.Rec. 17586 (daily
ed. Sept. 11, 1959); H.R.Rep. No. 1176,
86th Cong., 1st Sess. (1959).

[under the Immigration and Nationality Act] is a *country* and not a particular location" and Formosa is neither a country itself nor part of any country, its status being in limbo.[2]

Section 243(a) of the Immigration and Nationality Act of 1952 provides some nine places to which aliens may be deported.[3] In each case, with one possible exception not here relevant,[4] the place is described as a "country."

■ Although the term "country" is used in this and other sections of the Act, Congress has supplied no definition. It must therefore be given its ordinary meaning, consistent with the purposes of the legislation. Delaney v. Moraitis, 4 Cir., 1943, 136 F.2d 129; Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 52 S.Ct. 275, 277, 76 L.Ed. 587; cf. United States ex rel. Mensevich v. Tod, 1924, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591.

■■ The Supreme Court has pointed out that "the word 'country' * * * is ambiguous. It may be taken to mean foreign territory or a foreign government. In the sense of territory, it may embrace all the territory subject to a foreign sovereign power. When referring more particularly to a foreign government, it may describe a foreign State in the international sense * * * or it may mean a foreign government which has authority over a particular area or subject matter, although not an international person * * *." Burnet v. Chicago Portrait Co., supra.

Since Formosa is a well-defined geographical, social and political entity and since there is a government on Formosa which has undisputed control of the is-

---

2. China ceded Formosa to Japan in 1895. Following World War II, Japan surrendered all claims of sovereignty over Formosa. But in the view of our State Department, no agreement has "purported to transfer the sovereignty of Formosa to [the Republic of] China." At the present time, we accept the exercise of Chinese authority over Formosa, and recognize the Government of the Republic of China (the Nationalist Government) as the legal Government of China. That Government has its provisional capital at Taipei, Taiwan (Formosa). See documents reprinted in the District Court's opinion, D.D.C.1959, 177 F.Supp. 281.

3. 66 Stat. 214 (1952), 8 U.S.C.A. § 1253 (a).

The statute provides that a deportable alien may, with certain limitations, be deported to a country of his choice; to the country of which he is "a subject national, or citizen"; or in the discretion of the Attorney General to any of the following: (1) the country from which the alien last entered the United States; (2) the country in which is located the foreign port at which he embarked for the United States; (3) the country in which he was born; (4) the country in which his place of birth is situated when deportation is ordered; (5) any country in which he resided prior to entering the country from which he entered the United States; (6) the country which had sovereignty over his birthplace at the time of his birth; or (7) any country which is willing to accept him into its territory.

4. According to subsection (7), "if deportation to any of the foregoing *places* or countries is impracticable, inadvisable or impossible * * *" (emphasis supplied) then the alien may be deported "to any country willing to accept [him]." Appellees contend that the word "places" in this subsection was not intended to be synonymous with "countries" and thus does not broaden the meaning of "countries." Rather they contend, "places" was used to refer to "foreign territory contiguous to the United States or any island adjacent thereto." This phrase is used in § 243 to describe "places" which an alien may not designate as the preferred site of deportation. We note, without deciding whether "places" and "countries" were intended to be used as equivalents, that appellees' argument does not stand scrutiny. The portion of § 243 (a) to which they refer would seem to equate "country" and "place." It states that deportation shall be to "a *country* promptly designated by the alien" but "no alien shall * * * designate as the *place* to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto." (Emphasis supplied.) See also United States ex rel. Moon v. Shaughnessy, 2 Cir., 1954, 218 F.2d 316, 319.

land, we think it is a "country" within the meaning and purposes of the statute. This construction comports with Congress' evident purpose to reduce the number of "undeportables" by increasing the number of places to which an alien under a final order of deportation may be sent.[5] To hold otherwise would open to doubt the Attorney General's power to deport aliens to areas of the world where diplomatic status is unsettled, such as various trusteeships, protectorates or colonies.

We attribute no significance to the fact that the 1917 predecessor to § 243 (a) permitted aliens to be deported to the "country whence they came or the foreign port at which such aliens embarked for the United States." [6] Under this provision, appellees would be deportable to their point of embarkation on Formosa. The corresponding section now reads "the country in which is located the foreign port at which such alien embarked for the United States * * *," § 1253(a) (2). Congress gave no reason for the change, and we are unable to find that it was intended to be one of substance running counter to the congressional purpose of tightening the deportation laws.

Since we conclude that the word "country" as used in § 243(a) is not limited to national sovereignties in the traditional diplomatic sense, see United States ex rel. Moon v. Shaughnessy, 2 Cir., 1954, 218 F.2d 316, the possibilities of foreign affairs embarrassment which the District Court feared do not arise. Nor does this construction involve judicial intervention into political matters entrusted to the Executive and Legislative Branches. The judgment is accordingly

reversed and the case is remanded to the District Court with directions to grant summary judgment for the appellant.

So ordered.

---

5. See S.Rep.No. 1515, 81st Cong., 2d Sess. 637–38 (1950).

There were, in 1950, some 3,600 non-enforceable deportation orders because the countries concerned (especially Iron Curtain countries) refused to issue travel documents. One proposed bill sought to remedy the situation thus:

"Country of deportation: While under existing law a deportable alien can be deported only to the country from which he departed or the country of his citizenship or last foreign residence, this bill would authorize the Attorney General, within his discretion, to deport an alien to any country which will agree to accept him into its territory." S.Rep.No. 1515, supra.

This proposal was incorporated into the present legislation.

6. 39 Stat. 890 (1917).