Marco LIANG, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, George K. Rosenberg, District Director, Appellee.

No. 17184.

United States Court of Appeals
Ninth Circuit.

March 30, 1961.

Arthur Mabry, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine and Frederick M. Brosio, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Marco Liang, held under a warrant of deportation, seeks discharge in habeas corpus. He has appealed from an order of the district court denying him relief.

Liang entered this country October 29, 1949, under § 4(e) of the Immigration Act of 1924 (former Title 8 U.S.C. § 204 (e) )[1] qualifying as a non-quota immigrant for the reason that he had been ac-

cepted as a student by an approved school in this country. He was admitted for a period of one year. This stay was extended to October 12, 1951. There were no subsequent extensions. Since October 12, 1951, Liang has not engaged in studies at any educational institution.

On November 17, 1953, Liang applied for adjustment of his immigration status under § 6 of the Refugee Relief Act of 1953, 50 U.S.C.Appendix, § 1971d. This application was denied. On October 4, 1955, a deportation warrant of arrest was issued. For five years proceedings ran their course: hearings before special inquiry officers in Denver and in Miami, followed by two appeals to the Board of Immigration Appeals; applications by Liang for suspension of deportation under § 244(a) of the Immigration and Nationality Act, Title 8 U.S.C. § 1254(a), and for discretionary relief. At Liang's hearing, held in Miami, Florida, January 15, 1957, his counsel conceded "deportability on the charge as presently worded and that [Liang] is a technical overstay and is technically not maintaining status." Liang's position at that time was simply that he should be granted suspension of deportation. The ultimate determination was that Liang was ineligible for suspension of deportation and was deportable under § 241(a) (9).[2]

In the present proceedings in habeas corpus, it is Liang's position that he is not subject to deportation. He contends that under the provisions of the China

1. "204. Nonquota immigrant defined
   "When used in this chapter the term 'nonquota immigrant' means—

   *      *      *      *      *

   "(e) An immigrant who is a bona fide student at least fifteen years of age and who seeks to enter the United States solely for the purpose of study at an accredited school, college, academy, seminary, or university, particularly designated by him and approved by the Attorney General, which shall have agreed to report to the Attorney General the termination of attendance of each immigrant student, and if any such institution

of learning fails to make such reports promptly the approval shall be withdrawn; *  *  *." Now 8 U.S.C.A. § 1101(a) (15) (F).

2. "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General be deported who—

   *      *      *      *      *

   "(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status."

Area Aid Act of 1950,[3] he is maintaining non-immigration status and is entitled to remain in this country and seek employment even though he is no longer pursuing his studies.

We may concede for purposes of discussion, without discussing the many complexities of the question, that the China Area Aid Act provided means whereby Liang might have secured permission to remain in this country and secure employment. The difficulty is that on the occasions of his two administrative hearings and appeals he failed to show that he had either applied for or been granted the privileges conferred by the Act or even to suggest that he fell within the provisions of the Act.

In asserting his contention, Liang now relies upon the following statement made by him in his hearing held in Denver, Colorado, on December 16, 1955:

"In 1953, thirteen of my friends sponsored me. They wrote 13 letters to Senator Johnson to ask him to give me a special bill on American citizenship because at that time the Refugee Act hadn't passed. So Senator Johnson wrote me a letter about it telling me that he will introduce a private bill for me but at that time he said the Congress had just closed and he said to wait until January. He said a private bill would not be introduced until January, that would be 1954. Later on I received a letter, a new refugee application and also a pamphlet from him, and he said there was a very new law just passed by the President. He said he had telegraphed to El Paso, Texas office to ask if I was qualified for this application. The office wrote him a letter and he forwarded a letter to me and he said I was qualified. I wrote him again after I checked with Mr. E. R. Decker in this office and Mr. Decker told me I was not qualified. He said I still needed a special bill. I believe Sen-

ator Johnson talked over the telephone with someone in the Texas office and I think that office told him I was qualified. Mr. Decker told me that at that time I was not qualified because I came from Formosa. Senator Johnson checked into this matter and said I still would be qualified. He said send in the application form because only 5,000 will be granted and you will have the first chance. So I thought I would be safe and suddenly comes the denial and the deportation proceedings."

■ Liang contends that this ambiguous reference to incidents occurring in 1953 had reference to the China Area Aid Act of 1950 and demonstrates that somewhere in the files of the Immigration Service this application rests awaiting action. The United States asserts that the statement in question has reference to an application for suspension of deportation upon which action has been taken. We regard the statement as wholly insufficient to establish Liang's contentions in this respect.

Liang asserts that during the period from 1950 to 1957 his passport had been picked up by the Immigration Service and he had been told that he would not be permitted to leave the country. While the United States does not admit picking up Liang's passport, it does concede that during the period of hostilities in Korea passports of Chinese students were picked up by the Service as a matter of immigration control.

Such controls under such circumstances cannot be said to have any effect upon the status of the alien concerned. Such controls are wholly consistent with a continuing non-immigration status and with a return to deportability once the controls were lifted. Were the United States seeking to punish or prejudice Liang for failure to leave the country at a time when he was without a passport, the situation might well be different.

3. Title II, §§ 201, 202, of the Foreign Economic Assistance Act of 1950, Public Law 535, 81st Congress, 22 U.S.C.A. § 1547 and note.

Liang contends that he has been deprived of due process by virtue of certain unspecified errors committed during the course of the administrative hearings. This contention upon this appeal has not been sufficiently presented to permit us to deal with it.

Finally, Liang contends that Formosa is not a "country" to which he may be deported under 8 U.S.C. § 1253. Rogers v. Cheng Fu Sheng, 1960, 108 U.S.App.D.C. 115, 280 F.2d 663, certiorari denied, 1960, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187, holds to the contrary, and we agree.

Affirmed.