CHI SHENG LIU, Appellant,

v.

Ralph H. HOLTON, District Director, Immigration & Naturalization Service, Honolulu, State of Hawaii, Appellee.

No. 17127.

United States Court of Appeals
Ninth Circuit.

Dec. 14, 1961.

Rehearing Denied Jan. 30, 1962.

W. Y. Char, Honolulu, Hawaii, Wm. J. Gintjee, San Francisco, Cal., for appellant.

Louis B. Blissard, U. S. Atty., and Harry Dudley, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before POPE, HAMLIN and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This action is based on section 241(a)(2) of the Immigration and Nationality Act of 1952,[1] under which the Attorney General is empowered to deport any alien who is unlawfully in the United States. The appellant, a citizen of China, entered the United States in 1949 on a student visa. After the visa had expired, the Special Inquiry Officer of the Immigration and Naturalization Service directed him to leave the country. The appellant embarked for Communist China, but changed his mind during the journey and disembarked at Hawaii. The Service then issued an order deporting him to Communist China, but when the appellant insisted he would be persecuted there, the Service changed its order to provide for deportation to Formosa. This order was affirmed by the Board of Immigration Appeals and the Regional Commissioner. The appellant brought this action in the federal district court to suspend the deportation order,[2] but after a hearing the district court entered a dismissal order conditioned on a showing that the Nationalist Government of China would accept the appellant; upon receiving a letter to that effect purportedly written by the Consul General of that Government, it dismissed the action and the appellant has appealed.[3]

■ The appellant contends that the District Director of the Immigration and Naturalization Service abused his discretion in finding that the appellant would not be persecuted if he were deported to Formosa. Prior to the enactment of the Immigration and Nationality Act of 1952, the Attorney General was forbidden to deport an alien to any country where he found that the alien would be "physically persecuted."[4] This provision was changed by section 243(h) of the Act so that the Attorney General was "authorized," not required, to withhold deportation to any country which in his "opinion" would subject the alien to such persecution.[5] Thus, under the current statute the question of persecution depends on the Attorney General's discretion rather than an objective finding of fact. Many courts have held that this entirely precludes the judiciary from reviewing his conclusions, except where the alien is denied the opportunity to present evidence at the administrative hearing.[6] It has even been held that the Attorney General's decision can be formulated on the basis of confidential information which need not be disclosed to the court.[7]

■ We do not believe that section 243(h) is to be read in such a loose and unrestrictive fashion. Physical persecution involves a grave challenge to those personal rights so fundamental to our constitutional scheme; if the likelihood of this challenge rested entirely in executive hands, it is conceivable that those rights would be violated without due process of law.[8] As Judge Frank said in United States ex rel. Foo v. Shaughnessy, 234 F.2d 715, 720 (2d Cir., 1955), section 243(h) "comes close to [the brink

1. 66 Stat. 204, 8 U.S.C.A. § 1251(a) (2).

2. 60 Stat. 243, 5 U.S.C.A. § 1009 (1946).

3. 62 Stat. 929, 930, 28 U.S.C.A. § 1291, 1294 (1948).

4. 64 Stat. 987 (1950), 8 U.S.C.A. § 156 (Supp.1951).

5. 66 Stat. 212, 8 U.S.C.A. § 1253(h).

6. United States ex rel. Moon v. Shaughnessy, 218 F.2d 316 (2d Cir.1954); United

States ex rel. Dolenz v. Shaughnessy, 206 F.2d 392 (2d Cir.1953).

7. United States ex rel. Dolenz v. Shaughnessy, supra, n. 6; Almeida v. Murff, 159 F.Supp. 484 (S.D.N.Y.1958).

8. The staff of the House Judiciary Committee has criticized the Attorney General's exercise of his discretionary authority under § 243(h), among other reasons because appeals have been denied

of being unconstitutional], and perhaps goes over it, if interpreted to give the Attorney General, or any of his subordinates, arbitrary power." Administrative discretion should not be used as a cloak for a process which exposes one to the risk of oppression without judicial review. It has been suggested that the issue of persecution involves a political determination which more properly belongs to the executive rather than the judicial realm.[9] But there is no indication that the broadening of the Attorney General's powers in these matters was predicated upon any political considerations, or that the courts' review of these questions unduly obstructed the conduct of the nation's foreign affairs. The language of the Displaced Persons Act [10] and the Refugee Relief Act [11] permits the courts broad powers of review on the question of persecution, and this has not apparently given rise to injurious political consequences. Therefore, we conclude that while the Attorney General is invested with wide discretion, an alien is entitled to a suspension of deportation if he can establish that the exercise of this discretion was not based on a reasonable foundation.[12]

■ The appellant has failed to convince us that the action of the District Director was arbitrary and capricious. He contends that the Nationalist Government of China is barbaric and ruthless, and would subject him to oppression because of his earlier declaration that he would prefer to live in Communist China. But we are not aware that the Nationalist Government is so uncivilized, and the appellant has failed to further enlighten us on this subject. Even so, the appellant has not shown that he holds, or has held, any political attitude inimical to that Government. It is likely that his preference for living on the mainland stemmed from the presence of his family and friends there. We do not believe the Nationalist Government would be so sensitive to the appellant's preference for living with his family as to abuse him, especially after he has withdrawn that choice because of his fear of the mainland Government. This situation does not give rise to the well-found fears which were present in the Foo case. There the alien had actively engaged in political conduct against the Government of Communist China, and the court stayed his deportation to the mainland because of the reasonable certainty that he would be executed on his return.

■ Section 243(a) of the Immigration and Nationality Act provides various places to which an alien may be deported, each of which is designated as a "country." [13] The appellant argues that

---

where persecution appeared "with a reasonable degree of probability." House Judiciary Committee, Report on the Administration of the Immigration and Nationality Act, 84th Cong., 1st Sess. 69 (Committee Print 1955).

9. See n. 7, supra.

10. 62 Stat. 1010 (1948), as amended, 50 U.S.C.A.Appendix § 1952 (1952).

11. 67 Stat. 403 (1953), as amended, 50 U. S.C.A.Appendix § 1971d (1954).

12. The appellant has referred us to Cheng Fu Sheng v. Barber, 269 F.2d 497 (9th Cir.1959), where this court suspended the deportation of aliens to Formosa who, after deserting the Formosan Army, had sought refuge in the United States. However, that case arose under the Refugee Relief Act, which gives the Attorney General no discretion in determining the

question of persecution, see n. 11, supra, and the court specifically distinguished that case from those arising under § 243 (h). Also, it was shown that the aliens could receive a maximum sentence of three years for desertion, which provides a more rational basis for a fear of reprisal than in this case. Even then, the Refugee Relief Act requires such aliens to be deported unless Congress provides a permanent residence for them, id., and since Congress failed to enact legislation in behalf of these aliens, see Rogers v. Cheng Fu Sheng, 108 U.S.App.D.C. 115, 280 F.2d 663 n. 1 (D.C.Cir.1960), cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960), they were deported.

13. Section 243(a) reads:
"The deportation of an alien in the United States provided for in this chapter, or any other Act or treaty, shall be

Formosa is not a "country" within the meaning of that section, and that therefore an alien cannot be deported there. This view was taken by the district court in Cheng Fu Sheng v. Rogers, 177 F. Supp. 281 (D.C. 1959), but on appeal the District of Columbia Court of Appeals held that Formosa was a "country" within the meaning of the statute. 280 F.2d 663, cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960). The appellant argues that we should adopt the view of the lower court, but in Liang v. United States Dept. of Justice, etc., 290 F.2d 614 (9th Cir., 1961), a case decided after the appellant briefs had been filed in this action, we decided that the view of the appellate court was better reasoned. We again express our agreement with that decision.

■ The appellant contends that the deportation order should be suspended because there has not been an attempt

to comply with the provision of section 243(a) of the Act which provides that an alien cannot be deported to any country unless its government is "willing to accept him into its territory".[14] In United States ex rel. Tom Man v. Murff, 264 F.2d 926 (2d Cir., 1959), the Second Circuit interpreted this to mean the appropriate government had to indicate whether it would accept the alien prior to the time the deportation order is entered, so that the alien's status is not left in doubt until he steps on the other shore. In this instance, a letter purportedly from the Chinese Consul General was received by the Immigration and Naturalization Service after a special inquiry had been made to that official, and nothing indicates that the letter was sent by anyone other than the Counsul General. However, the appellant argues that the letter should not have been admitted into evidence because it was not properly authenticated. We do not believe that formal rules of evidence should be applied in this

directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of, or had a residence in such designated foreign contiguous territory or adjacent island. If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject [,] national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem rea-

sonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—

(1) to the country from which such alien last entered the United States;

(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

(3) to the country in which he was born;

(4) to the country in which the place of his birth is situated at the time he is ordered deported;

(5) to any country in which he resided prior to entering the country from which he entered the United States;

(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth; or

(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

14. See n. 13, supra; United States ex rel. Tom Man v. Murff, 264 F.2d 926 (2d Cir.1959).

situation. The purpose of requiring a preliminary acceptance is not to establish a material element of the case for deportation, but rather to facilitate the deportation process. A court should be able to fashion a decree with a reasonable assurance that it is practically enforceable and will not require subsequent revision, and an alien should not be shuttled back and forth because of a failure to ascertain in advance whether he will be accepted at his destination. For these purposes, the letter apparently written by the Counsul General is sufficient evidence of his Government's willingness to accept the appellant.

 The appellant also contends that the letter from the Chinese Consul General is an ineffective acceptance because it is conditional. The letter indicated that the Nationalist Government would accept the appellant "if the United States Government finds it not possible under any circumstances to further extend his stay in this country as he desires." This can hardly be considered the kind of condition which will impede the mechanics of deportation; it involves nothing more than the disposition of this case adversely to the appellant, a condition which is entirely within the power of the judiciary to satisfy. The letter from the Consul General is sufficiently definite to satisfy the statute.

During the oral argument before this court, the appellant contended that the deportation order is ineffective because of the District Director's failure to comply with the statutory provision which allows the alien to initially choose the country to which he wishes to be deported, and makes him deportable elsewhere only after it is determined that the designated country is unwilling to accept him.[15] The appellant asserted that he had not been given his choice. But he did not tender this as an issue in his pleadings; no evidence was introduced on this subject at the trial, and it was not mentioned in his brief. We have not been informed why the appellant did not raise this issue earlier, and he should not be allowed to assert it for the first time on appeal.[16]

The judgment of the district court is

Affirmed.

15. See n. 13, supra.

16. See First Federal Savings & Loan Assn. of Bremerton v. United States, 295 F.2d 481 (9th Cir.1961) ; Inman-Poulsen Lumber Co. v. Commissioner, 219 F.2d 159 (9th Cir.1955) ; United States v. Hoth, 207 F.2d 386 (9th Cir.1953).