NG KAM FOOK, Appellant,

v.

P. A. ESPERDY, as District Director of the Immigration and Naturalization Service, Appellee.

AU TONG, Appellant,

v.

P. A. ESPERDY as District Director of the Immigration and Naturalization Service, Appellee.

Nos. 368, 369, Dockets 27542, 28121.

United States Court of Appeals Second Circuit.

Argued June 3, 1963.

Decided July 2, 1963.

Jules E. Coven, New York City (Abraham Lebenkoff and Lebenkoff & Coven, New York City, on the brief), for appellants.

Roy Babitt, Sp. Asst. U. S. Atty., Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., Southern District of New York, on the brief), for appellee.

Before LUMBARD, Chief Judge, CLARK, Circuit Judge, and BARTELS, District Judge.

BARTELS, District Judge.

Plaintiff Ng Kam Fook (Fook) and plaintiff Au Tong (Tong) have joined in a consolidated appeal involving identical questions, from an order by Judge Metzner in each case, granting summary judgment in favor of the District Director, Immigration and Naturalization Service, New York District, in actions seeking to review the order of the Attorney General directing the deportation of Fook to Hong Kong and the deportation of Tong to the Netherlands.

The question involved in this appeal is the construction of the word "country" as used in Section 243(a) of the Immigration and Nationality Act of 1952 (the Act), (8 U.S.C. § 1253(a)), which sets forth a pattern for deportation of aliens illegally present in the United States. In providing for the mechanics for the enforcement of a deportation order, the section prescribes in succession three priorities for the deportation of an alien, in each of which the word "country" is employed; (1) deportation to a country designated by the alien if the country is willing to accept him; (2) upon failure to receive timely acceptance from the country mentioned in (1), deportation to "any country of which such alien is a subject, national, or citizen if such country is willing to accept him into its territory"; and (3) upon failure to receive

timely acceptance from the country mentioned in (2), deportation to any one of seven categories of countries mentioned in the Act within the discretion of the Attorney General without priority as to order.

Fook and Tong arrived in the United States as crewmen, Fook in 1955 and Tong in 1953. Both were born on the mainland of China at the time it was under the control of the Nationalist Government of China, and both are concededly here illegally and subject to deportation. Each declined to designate a country to which he wished to be sent if deported, as provided in the first priority of the statute, thus requiring resort to the second priority. The United States recognizes only the Government of the Republic of China (Nationalist China) with a capital on Formosa as the legal Government of China and as the Government of which these appellants are subject nationals and citizens, see Rogers v. Cheng Fu Cheng, 108 U.S.App.D.C. 115, 280 F.2d 663, cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960). Accordingly, after their hearings the Attorney General inquired of the Nationalist Government on Formosa whether these aliens would be accepted by the Government upon deportation and the reply was in the negative. The Attorney General then resorted to the third priority and ordered Fook to be deported to Hong Kong and Tong to be deported to the Netherlands. The appellants claim that they are subject nationals and citizens of the Chinese mainland, which they claim is a "country" as that term is used in the second priority, and that the Attorney General was obligated under the Act to make preliminary inquiry of that Government to ascertain whether they were acceptable to that Government before directing deportation elsewhere.

This Court has held in the past that in construing Section 243(a) of the Act, "The word 'country' has no fixed meaning, and should be construed in accordance with the purpose of the particular legislation." Chan Chuen v. Esperdy, 285 F.2d 353 (2 Cir. 1960). In United States ex rel. Tom Man v. Murff, 264 F.2d 926 (2 Cir. 1959), and in United States ex rel. Leong Choy Moon v. Shaughnessy, 218 F.2d 316 (2 Cir. 1954), the mainland of China was deemed a "country" for the purpose of deportation under the third priority, the Man case holding that such deportation was subject to the condition of a preliminary inquiry of acceptability which, the court added, would not invade the prerogative of the Executive Department. These cases cannot be regarded, however, as holding that the Chinese mainland is a "country," as that term is used in all the other provisions of the Act. When referring to nationality and citizenship of a country, different concepts arise. The term "country," when referring to a foreign country, is ambiguous. "It may be taken to mean foreign territory or a foreign government. In the sense of territory, it may embrace all the territory subject to a foreign sovereign power. When referring more particularly to a foreign government, it may describe a foreign State in the international sense, that is, one that has the status of an international person with the rights and responsibilities under international law of a member of the family of nations * * *." Burnet v. Chicago Portrait Co., 285 U.S. 1, 5, 52 S.Ct. 275, 277, 76 L.Ed. 587 (1932). In other words, the different situations envisioned by the Act do not permit an absolutist approach to the definition.

In connection with naturalization and citizenship the dominant consideration is not geographical and in such case it is not unreasonable to construe the word "country" as meaning a foreign state with the rights and responsibilities under international law of a member of the family of nations. This apparently is what the court had in mind when Judge Hand said in the Man case in referring to deportation of a Chinese alien to the mainland under the third priority, "We assume that he cannot be regarded as a 'subject national, or citizen' of the Communist Government, because we do not recognize that as more than a *de facto*

government." United States ex rel. Tom Man v. Murff, 264 F.2d 926, 928 (2 Cir. 1959). But the United States does recognize the Government of the Republic of China with a capital on Formosa as the *de jure* Government of China. The courts have accordingly upheld the action of the Attorney General in deporting to Formosa Chinese aliens born on the mainland under the second priority of the Act. See Lee Wei Fang, et al. v. Kennedy, 115 U.S.App.D.C. ——, 317 F.2d 180 (D.C.Cir. 1963); Dai Ming Shih v. Kennedy, 111 U.S.App.D.C. 380, 297 F. 2d 791 (D.C.Cir. 1961), cert. denied, 369 U.S. 844, 82 S.Ct. 876, 7 L.Ed.2d 848 (1962); Liang v. United States Dept. of Justice, 290 F.2d 614 (9 Cir. 1961); Chao-Ling Wang v. Pilliod, 285 F.2d 517 (7 Cir. 1960); Rogers v. Cheng Fu Cheng, supra; cf., Leong Leun Do v. Esperdy, 309 F.2d 467 (2 Cir. 1962). This construction of the term "country", as used in the second priority of the Act, is consistent with the purpose of the legislation to facilitate the enforcement of deportation orders and to reduce the number of unenforceable orders, Rogers v. Cheng Fu Cheng, supra, and it is not inconsistent with a different meaning given the same term elsewhere in the Act, as for instance, in describing a geographical area which an alien may designate for deportation, or an area from which an alien may embark, or in which an alien may be born. See Delany v. Moraitis, 136 F.2d 129, 131 (4 Cir. 1943).

■■ In the present proceeding another factor is also important. Assuming, *arguendo,* that the Chinese mainland could be a "country", as that term is used in the second priority of the Act, the appellants have presented no evidence that actually they are subject nationals or citizens of the Communist Government on the mainland. The record is devoid of any evidence whatsoever of their allegiance to this Government which now controls the area. As above stated, Fook and Tong were both born on the mainland of China at the time it was controlled by the Nationalist Government. According to the record, Fook stated that he was an adherent of the Nationalist Government at the time he left and in fact, was travelling on a passport issued by that Government. Tong stated on the record that he did not wish to be sent to a Communist country, which automatically included the Communist Government on the mainland. As observed by Judge Parker in Delany v. Moraitis, supra, "a man's 'country' is more than the territory in which its people live. The term is used generally to indicate the state, the organization or social life which exercises sovereign power in behalf of the people." (id. 136 F.2d at 130). As used in the Act, "[t]he term 'national' means a person owing permanent allegiance to a state"[1]. Clearly, the allegiance of these appellants was not to the Chinese Government on the mainland. Their original allegiance was unquestionably to the Nationalist Government now on Formosa, and the record discloses no evidence of any change in this allegiance. Their "original citizenship is, therefore, to be presumed to have continued", Hauenstein v. Lynham, 100 U.S. 483, 25 L.Ed. 628 (1880). The bare allegations of these aliens to the contrary, in the absence of any proof or showing, lack sincerity and are insufficient to cast a substantial doubt upon their actual allegiance to or citizenship of the Nationalist Government on Formosa. It is unnecessary, therefore, to predicate our conclusion solely upon the construction of the word "country", as used in the statute, dictated primarily upon the non-recognition of the Communist Government which in turn is based upon the theory that a preliminary inquiry might impliedly suggest recognition and thus might embarrass the decisions of the Executive Department as to foreign policies. See Cardozo, Judicial Deference to State Department Suggestions: Recognition of Prerogative or Abdication to Usurper?, 48 Cornell L. Q. 461 (1963).

The Attorney General having complied with the requirements of the Act, the

---

1. 8 U.S.C. § 1101(a) (21).

judgment of the District Court is affirmed.

LUMBARD, Chief Judge (dissenting).

For the reasons stated in my concurring opinion in Leong Leun Do v. Esperdy, 309 F.2d 467, 475, 477–479 (2 Cir. 1962), I would hold that for purposes of the present proceeding, "the Chinese mainland is a country of which an alien may be a subject national or citizen." Id. 309 F.2d at 478. It seems to me that some agencies of the United States government could, directly or through intermediaries, contact agents of the Communist government without implying recognition. If such a procedure is rejected by the executive branch, then, under the present statute, the alien should not be deported. This area of the law seems to be one which particularly requires legislative attention.

I would reverse the summary judgments of the district court which dismissed the complaint.