CHENG, Pun Hoi (A19 389 492), Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 74-2264.

United States Court of Appeals, Third Circuit.

Argued June 24, 1975.

Decided Aug. 18, 1975.

Certiorari Denied Jan. 12, 1976.

See 96 S.Ct. 779.

Jules E. Coven, Lebenkoff & Coven, New York City, for petitioner.

John L. Murphy, Chief, Government Regulations Section, Crim. Div., and Chester J. Halicki, Dept. of Justice, Washington, D. C., for respondent.

Before VAN DUSEN, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

This Amended Petition for Review of a December 30, 1974, order of the Board of Immigration Appeals raises the issue of whether petitioner is a "subject national or citizen of" the People's Republic of China within the meaning of 8 U.S.C. § 1253(a).[1]

At a deportation hearing on May 19, 1972, petitioner conceded the allegations in the Order to Show Cause, which indicated that he was a native of China and

---

1. 8 U.S.C. § 1253(a) contains this language, *inter alia*, prescribing three steps for determining the country to which a deportable alien shall be sent:

Step 1. "The deportation of an alien . . shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. . . ."

Step 2. "Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. . . ."

Step 3. If the country designated in Step 2 will not accept the alien, "then such deportation shall be directed by the Attorney General within his discretion and without neces-

sarily giving any priority or preference because of their order as herein set forth either—

"(1) to the country from which such alien last entered the United States;

"(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

.    .    .    .    .

"(5) to any country in which he resided prior to entering the country from which he entered the United States;

.    .    .    .    .

or

"(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."

a citizen of the Republic of China.[2] At that hearing he was granted the privilege of voluntary departure, failing which he was ordered deported to the Republic of China (Taiwan) or, in the alternative, to Hong Kong. No objection was made at that time to the designations of such countries of deportation. The immigration judge named the Republic of China (Taiwan) pursuant to 8 U.S.C. § 1253(a) and in reliance upon previous decisions of the Board of Immigration Appeals with reference to the citizenship of Chinese aliens · born on mainland China.

Petitioner did not depart the United States. In September 1972, he applied for political asylum under the United Nations Treaty, claiming that he was a political refugee from mainland China. This application was denied on November 21, 1973. On December 11, 1974, petitioner moved to reopen the 1972 deportation order on the ground that the United States had, in the interim, altered its position with respect to the People's Republic of China. The motion was denied by the immigration judge in an opinion dated December 16, 1974; the Board of Immigration Appeals affirmed in an opinion dated December 30, 1974, saying, *inter alia*, "[w]e agree with the well reasoned decision of the immigration judge."

In affirming, the Board found that petitioner was not "prejudiced by the immigration judge's designation of the places of potential deportation" since he had sought political asylum from the People's Republic of China and had never sought to be deported there. Order of December 30, 1974, at 3. Indeed, petitioner had not designated any country to which he desired deportation.[3] Under these circumstances, the Board affirmed the action of the immigration judge in ordering deportation first to Taiwan or alternatively, to Hong Kong.

That part of the 1972 order directing petitioner's deportation to Taiwan was pursuant to 8 U.S.C. § 1253(a)'s provision for deporting an alien "to any country of which such alien is a subject national, or citizen if such country is willing to accept him . . . ."[4] Petitioner contends that he is a citizen, not of Taiwan, but of the People's Republic of China and that he should, therefore, have been ordered deported to the latter country rather than to the former. Had he been ordered deported to the People's Republic, petitioner would have been allowed to apply for political asylum under 8 U.S.C. § 1253(h);[5] had this application

---

2. The petitioner was born in Foochow, China, on December 12, 1934. In November 1961, he fled to Hong Kong. He illegally entered the United States from Hong Kong in or about August of 1970.

3. The decision of the administrative law judge contains this language at 11:

"All of these respondents deliberately and upon advice of experienced counsel, declined to designate a place of deportation. They likewise made no claim that they would be persecuted in either of the places designated, the Republic of China on Formosa and Hong Kong. By their refusal, deliberate and calculated, to designate their preference in the event of an order of deportation, it was required that their country of alleged citizenship be designated first. All of these respondents were advised that they were considered to be citizens of the Republic of China on Taiwan and raised no complaint. In fact they readily acknowledged the accuracy of that assertion in the Order to Show Cause. None of them expressed a desire to

return to the Peoples Republic of China. None of them chose as the place of deportation the Peoples Republic of China or Hong Kong, in which latter country they had all either lived for many years or used as their base of operations while working as crewmen."

4. The Republic of China has refused to accept petitioner.

5. "(h) the Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason."

The United Nations Protocol Relating to the Status of Refugees is inapplicable to petitioner since he is not lawfully in the United States. *Kan Kam Lin v. Rinaldi*, 361 F.Supp. 177, 183–84 (D.N.J.1973), *aff'd*, 493 F.2d 1229 (3d Cir. 1974).

been granted, he would have received an indefinite stay of deportation. Thus, petitioner argues, he was indeed prejudiced by the decisions of the immigration judge and of the Board.

Petitioner bases his claim that he is a "subject national, or citizen" of the People's Republic upon certain memoranda circulated within the Department of State. These memoranda[6] are read by petitioner as indicating that persons in petitioner's situation—born on mainland China who had left the mainland for Hong Kong and later entered the United States—are considered by the State Department to be citizens of the People's Republic rather than of Taiwan. This change in the State Department's position, it is urged, opens to question former decisions of the Board and of the courts that designated persons in petitioner's circumstances as citizens of Taiwan within 8 U.S.C. § 1253(a). See, e. g., *Ng Kam Fook v. Esperdy*, 320 F.2d 86 (2d Cir. 1963), and cases there cited. In response to the inquiry of this court, the Department of State has reaffirmed that it considers petitioner, and persons in his circumstances, to be citizens of Taiwan:

"That statute [8 U.S.C. § 1253(a)] provides that if an alien fails to designate a country to which he wishes to be deported, his deportation shall be directed toward 'any country of which such alien is a subject[,] national, or citizen if such country is willing to accept him into its territory.'

"Normally, the United States does not deport aliens to countries with whose government we do not have diplomatic relations. At the present time, with respect to persons who come from mainland China and claim to be citizens of the People's Republic of China and not the Republic of China, we believe there is no appropriate government with which we have diplomatic relations for purposes of directing a request for admission of an alien pursuant to Section 1253(a). Therefore, we believe it would be appropriate for the Attorney General to proceed to deport the petitioner, presumably to Hong Kong, pursuant to his discretionary authority as set forth in Section 1253(a)."

Thus, the State Department memoranda upon which the Amended Petition for Review was predicated do not have the meaning ascribed them by petitioner and can provide no basis for overturning the decision of the Board.

For the foregoing reasons, the Amended Petition for Review will be denied. Costs shall be taxed against petitioner in accordance with *DiMattina v. I. N. S.*, 506 F.2d 443 (3d Cir. 1974).[7]

---

6. The February 14, 1973, Memorandum to certain District Directors of the I.N.S. (p. 4–B of Appendix) provides:

"The Central Office, after consultation with the Department of State has been informed that there is no likelihood that citizens of the Peoples' Republic of China who fled to Hong Kong and have resided there for a substantial period of time will be persecuted within the meaning of the Convention on Refugees if they are deported to Hong Kong, nor is there any specific reason to believe that such persons will be returned by the Government of Hong Kong to countries where they will face persecution. The policy of the Department of State is to deny requests for asylum from such aliens provided they are deported to Hong Kong and not the Peoples' Republic of China and that the British Crown Colony of Hong Kong will accept them. Last minute requests concerning return of Chinese to Hong Kong as described above can be handled by this Service without consultation with the Department of State. It must be understood, however, that such aliens will have the benefits available to them in deportation hearings including that of withholding deportation under section 243(h) and the application of the Convention on Refugees where that is appropriate."

The January 1973 letter to the Associate Commissioner for Operations of the I.N.S. (5–B of Appendix) contains substantially the same language.

7. Since stipulations have been filed in each of the following cases providing that they are to be governed by the decision entered in this case, the Petitions for Review in these cases will be denied on the terms described in this paragraph: Third Circuit Nos. 74–2273, 75–1210, 75–1227, 75–1229, 75–1258, 74–2257, 75–1209, 75–1230, 75–1281, 75–1291, 75–1326, 75–1327, 75–1328, 75–1364, 75–1400, 75–1228, 75–1478, 75–1416, 75–1442, 75–1460, 75–1506, 75–1507, 75–1543, 75–1572 and 75–1573.