## MATTER OF LINNAS

### In Deportation Proceedings

### A-8085626

*Decided by Board October 16, 1985*

(1) The term "country," used to describe a place of deportation under section 243(a) of the Immigration and Nationality Act, 8 U.S.C. § 1253(a) (1982), means, at a minimum, a foreign place with "territory" in a geographical sense and a "government" in the sense of a political organization that exercises power on behalf of the people subjected to its jurisdiction.

(2) Offices maintained in New York City on behalf of the Republic of Estonia do not qualify under section 243(a) of the Act as a "country" of deportation.

(3) When an alien who is a native of Soviet-occupied Estonia steadfastly rejects allegiance to the Soviet Union, that country does not constitute a country of which the alien is a "subject, national, or citizen" within the meaning of section 243(a) of the Act.

(4) When no other country but the Soviet Union is willing to accept a deportable alien into its territory, then the Soviet Union properly may be designated as the country of deportation under the provision in section 243(a)(7) of the Act authorizing deportation of an alien to any country that is willing to accept him.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]—Excludable at entry under sections 2, 10, and 13 of the Displaced Persons Act of 1948

Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered in violation of sections 2, 10, and 13 of the Displaced Persons Act of 1948

Sec. 241(a)(19) [8 U.S.C. § 1251(a)(19)]—Participation in Nazi persecution

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:
Ivars Berzins, Esquire            Jeffrey N. Mausner
484 West Montauk Highway          Aron A. Golberg
Babylon, New York 11702           Trial Attorneys

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

This is a case we previously heard on appeal and remanded to the immigration judge for designation of a country of deportation

pursuant to section 243(a) of the Immigration and Nationality Act, 8 U.S.C. § 1253(a) (1982). It is before us again by means of an appeal filed by the respondent challenging the immigration judge's decision of April 9, 1985, designating the U.S.S.R. as the country of deportation. For the reasons stated herein, we affirm the immigration judge's designation and shall dismiss the appeal.

The pertinent facts are as follows. The respondent is a 66-year-old male who is a native of Estonia, one of the three Baltic states that were annexed by the Soviet Union after the defeat of Germany in World War II. He entered the United States after the war, and in 1960 he became a naturalized citizen of this country. In 1979 the respondent was denaturalized on the grounds that he had illegally procured his citizenship by failing to disclose the fact that he had served at a concentration camp in Estonia under the direction of the Nazis during World War II. The Immigration and Naturalization Service subsequently instituted deportation proceedings against the respondent, charging him with various grounds of deportability, among which was deportability pursuant to section 241(a)(19) of the Act, 8 U.S.C. § 1251(a)(19) (1982), for having assisted the Nazis in persecuting others because of their race, religion, national origin, or political opinion. The respondent was found by the immigration judge to be deportable as charged and was ordered deported to the U.S.S.R. On July 31, 1984, we affirmed the finding of deportability and, on the basis of that finding, concluded that the respondent is statutorily ineligible for various forms of relief from deportation, including asylum and withholding of deportation from the U.S.S.R. However, in light of the respondent's contention that deportation of a native of Estonia to the U.S.S.R. would violate United States foreign policy, which has never recognized the legitimacy of the Soviet Union's annexation of Estonia, we remanded the case to the immigration judge to reconsider the issues raised by selection of the U.S.S.R. as the country of deportation. Pursuant to our order, the immigration judge conducted additional hearings between October 1984 and March 1985, at which both the respondent and the Service presented additional evidence on the question of the proper country of deportation. On April 9, 1985, the immigration judge issued a new decision designating the U.S.S.R. as the country of deportation pursuant to provisions in the Act authorizing deportation to the country in which an alien's place of birth is situated at the time he is ordered deported or to any country that is willing to accept an alien into its territory. See Sections 243(a)(4), (7) of the Act. The respondent thereupon filed this appeal.

Section 243(a) of the Act sets forth, in order of priority, three steps for designating a country of deportation. Step #1 provides

that an alien himself may designate a country of deportation. If an alien declines to make a proper designation, or if the government of the country an alien designates is unwilling to accept him, or if the designation is prejudicial to the United States, then step #2 authorizes the Attorney General to deport an alien to any country of which he is a subject, national, or citizen, so long as the government of that country is willing to accept him into its territory. If deportation cannot be accomplished under this step, then step #3 authorizes the Attorney General to deport an alien to any one of the following seven categories of countries without priority as to their order: (1) the country from which the alien last entered the United States; (2) the country in which is located the foreign port at which the alien embarked for the United States; (3) the country in which the alien was born; (4) the country in which the place of the alien's birth is situated at the time he is ordered deported; (5) any country in which the alien resided prior to entering the country from which he entered the United States; (6) any country that had sovereignty over the alien's birthplace at the time of his birth; or (7) if deportation to the foregoing is impracticable, inadvisable, or impossible, then to any country that is willing to accept the alien into its territory. Sections 243(a)(1)–(7) of the Act; *Ng Kam Fook* v. *Esperdy*, 320 F.2d 86, 87–88 (2d Cir. 1963); *Matter of Lau*, 12 I&N Dec. 573, 574–75 (BIA 1968).

At both his original deportation hearing and upon remand to the immigration judge, the respondent designated the "free and independent Republic of Estonia" as his choice for a place of deportation under the first step of Section 243(a) of the Act, contending that since the Republic of Estonia is currently occupied by the U.S.S.R., he should be sent to offices maintained by the Republic of Estonia in New York City. Since the respondent is required to designate a "country" as the place of deportation under step #1 Section 243(a) of the Act, his choice raises the issue of whether offices maintained on behalf of the Republic of Estonia in New York City constitute a "country" within the meaning of the first step of section 243(a).

Initially, we note that there is authority for the position that such offices may come within the meaning of the term "country" for purposes of determining a proper place of deportation. During World War II, in *Delany* v. *Moraitis*, 136 F.2d 129 (4th Cir. 1943), the United States Court of Appeals for the Fourth Circuit held that the Greek government-in-exile located in England was the proper place of deportation for an alien, pursuant to a statutory provision authorizing deportation to the "country" whence the alien came. The alien in question was a native of Greece which, at the time,

was under German domination, and the Greek government-in-exile in England was recognized by the United States as the de jure government of Greece. The Fourth Circuit construed the term "country" to mean not only a particular geographical territory but the recognized state or sovereign that exercises power in international matters on behalf of the nationals of that territory. The court therefore concluded that the Greek government-in-exile was a "country" for purposes of designating a place of deportation. *Id.* at 130–31. Two months after the decision in *Delany v. Moraitis*, however, Congress amended the statutory provision in question expressly to provide that during time of war an alien who was a subject or citizen of a country with a recognized government-in-exile could be deported to the country in which the government-in-exile was located.[1] This alternative provision for selecting a country of deportation in cases involving a government-in-exile was carried over into the Act and currently appears in section 243(b), 8 U.S.C. § 1253(b) (1982).[2] We conclude that Congress' creation and continued use of an alternate provision for designating a place of deportation in cases involving a government-in-exile supersedes the Fourth Circuit's decision in *Delany v. Moraitis*. Therefore, to the extent that the case stands for the proposition that the term "country" can be construed to encompass a government-in-exile, it is no longer effective law.

---

[1] Section 20 of the Immigration Act of 1917, 39 Stat. 874, 890, was amended by the Act of July 13, 1943, 57 Stat. 553 (repealed 1952) to include, in pertinent part, the following language:

If the United States is at war and the deportation, in accordance with the preceding provisions of this section, of any alien who is deportable under any law of the United States, shall be found by the Attorney General to be impracticable or inconvenient because of enemy occupation of the country whence such alien came or wherein is located the foreign port at which he embarked for the United States or because of other reasons connected with the war, such alien may, at the option of the Attorney General, be deported (a) if such alien is a citizen or subject of a country whose recognized government is in exile, to the country wherein is located that government in exile, if that country will permit him to enter its territory. . . .

[2] Section 243(b) of the Act provides, in pertinent part, as follows:

If the United States is at war and the deportation, in accordance with the provisions of subsection (a), of any alien who is deportable under any law of the United States shall be found by the Attorney General to be impracticable, inadvisable, inconvenient, or impossible because of enemy occupation of the country from which such alien came or wherein is located the foreign port at which he embarked for the United States or because of reasons connected with the war, such alien may, in the discretion of the Attorney General, be deported as follows:

(1) If such alien is a citizen or subject of a country whose recognized government is in exile, to the country in which is located that government in exile if that country will permit him to enter its territory. . . .

More recent cases have construed the term "country," as it is used to describe a place of deportation in section 243(a) of the Act, to have different meanings depending upon the context in which the term is used.[3] In context of step #2 of section 243(a), the Second Circuit, the circuit in which the respondent's case arises, has construed the term "country" to mean a foreign territory that is under the control of a de jure government recognized by the United States. *Ng Kam Fook* v. *Esperdy*, *supra*, at 88-89 (citing *United States ex rel. Tom Man* v. *Murff*, 264 F.2d 926, 928 (2d Cir. 1959)).[4] In the context of step #3 of section 243(a), however, the Second Circuit has construed the term "country" to mean merely a foreign territory that has a government with authority to accept a deportable alien. *Chan Chuen* v. *Esperdy*, 285 F.2d 353 (2d Cir. 1960) (per curiam); *United States ex rel. Tom Man* v. *Murff*, *supra*, at 928; *United States ex rel. Leong Choy Moon* v. *Shaughnessy*, 218 F.2d 316 (2d Cir. 1954).[5] Under the latter construction, it is immaterial whether the foreign government with jurisdiction over a territory is recognized by the United States, whereas under the former construction, official recognition by the United States is required. *Compare Ng Kam Fook* v. *Esperdy*, *supra*, *with United States ex rel. Leong Choy Moon* v. *Shaughnessy*, *supra*.

We need not decide which of these two constructions pertains to step #1 of section 243(a) of the Act in order to determine whether the respondent has properly designated the offices of the Republic of Estonia as a "country." The case law discussed above shows that under either construction the term "country" has been understood,

---

[3] The term "country" has also been construed to have different meanings depending upon whether the term describes a place of deportation for purposes of exclusion proceedings under section 237(a) of the Act, 8 U.S.C. § 1227(a) (1982), or a place of deportation for purposes of deportation proceedings under section 243(a) of the Act. *See United States ex rel. Tom We Shung* v. *Murff*, 176 F. Supp. 253, 257-58 (S.D.N.Y. 1959), *aff'd per curiam*, 274 F.2d 667 (2d Cir. 1960). Since we are construing the term for purposes of section 243(a), we are not bound by the construction given to the term under section 237(a). *See id.*

[4] This is consistent with the construction that other courts and the Board have given to the term as it is used in the second step of section 243(a) of the Act. *Cheng* v. *INS*, 521 F.2d 1351 (3d Cir. 1975), *cert. denied*, 423 U.S. 1051 (1976); *Lee Wei Fang* v. *Kennedy*, 317 F.2d 180 (D.C. Cir.), *cert. denied*, 375 U.S. 883 (1963); *Matter of Cheung*, 16 I&N Dec. 690 (BIA 1979); *Matter of S-Y-L-*, 9 I&N Dec. 575 (BIA 1962).

[5] This, too, is consistent with the position in other circuits. *See, e.g., Ying* v. *Kennedy*, 292 F.2d 740 (D.C. Cir.), *cert. denied*, 368 U.S. 914 (1961); *Rogers* v. *Cheng Fu Sheng*, 280 F.2d 663 (D.C. Cir.), *cert. denied*, 364 U.S. 891 (1960). We have not yet fully resolved the issue of whether a "country," for purposes of the third step section 243(a) of the Act, must have a government recognized by the United States. *Compare Matter of Niesel*, 10 I&N Dec. 57 (BIA 1962), *with Matter of Fwu*, 17 I&N Dec. 354 (BIA 1980).

at a minimum, to mean a foreign place with "territory" in a geographical sense and a "government" in the sense of a political organization that exercises power on behalf of the people subjected to its jurisdiction. *See Chan Chuen* v. *Esperdy, supra; Ng Kam Fook* v. *Esperdy, supra; United States ex rel. Tom Man* v. *Murff, supra; United States ex rel. Leong Choy Moon* v. *Shaughnessy, supra.* Indeed, section 243(a) of the Act clearly contemplates that these are essential aspects of a "country," for the language of that section expressly requires, or has been construed to require, that the "government" of a country selected under any of the three steps must indicate it is willing to accept a deported alien into its "territory." Section 243(a) of the Act; *United States ex rel. Tom Man* v. *Murff, supra,* at 928.

The respondent has not shown that the offices he designated under step #1 of section 243(a) satisfy these two prerequisites for a "country." The respondent's attorney has characterized the offices in New York as either a consulate or an embassy maintained on behalf of the Republic of Estonia. Under principles of international law a foreign mission is not considered to be the territory of the sending state; rather, it is considered to be within the territory of the receiving state. *See McKeel* v. *Islamic Republic of Iran,* 722 F.2d 582, 588 (9th Cir. 1983). Therefore, the offices designated are a part of the United States and are not a foreign "territory." *Id.* Moreover, these offices have not been shown to possess or to constitute a government. *See United States ex rel. Kusman* v. *District Director,* 117 F. Supp. 541, 546 (S.D.N.Y. 1953). Since the offices designated by the respondent do not qualify as a "country," he has not made a proper designation under step #1 of section 243(a) of the Act, and we must proceed to the second step in that section.

The directive in step #2 that an alien is to be deported to the country of which he is a subject, national, or citizen has been construed by the Second Circuit to refer to the country to which an alien owes allegiance. *Ng Kam Fook* v. *Esperdy, supra,* at 89. This construction is based primarily upon the Second Circuit's conclusion that the words "subject," "national," and "citizen" are synonymous terms describing an individual who owes allegiance to a particular government or political state. *Id.*[6] At his original hearing

---

[6] In 1963, when the Second Circuit construed the meaning of the second step in section 243(a), the language of that provision expressly authorized deportation to the country of which an alien was a "subject national, or citizen." *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 243(a), *reprinted in* 1952 U.S. Code Cong. & Ad. News 166, 212. In 1981, however, Congress amended section 243(a) of the Act by inserting a comma between the words "subject" and "national," thereby making
*Continued*

and on remand the respondent insisted that the only country to which he now owes allegiance is the "free and independent Republic of Estonia." Since we have already determined that the offices of the Republic of Estonia do not constitute a "country" within the meaning of section 243(a) of the Act, these offices are not a proper place of deportation under step #2. Moreover, although the Soviet Union has annexed Estonia and now exercises de facto jurisdiction over it, the respondent steadfastly rejects any allegiance to the U.S.S.R. Therefore, the Soviet Union is not a country of which the respondent is a "subject, national, or citizen." *Ng Kam Fook* v. *Esperdy, supra.* Since there is no country that fulfills step #2 of section 243(a), we must proceed to the last step in order to determine a proper place of deportation for the respondent.

Under that step, we are authorized to order the respondent's deportation to any country that is willing to accept him. Section 243(a)(7) of the Act. An affidavit and letters submitted by counsel for the Service on remand show that Canada and West Germany are not willing to accept the respondent but that the U.S.S.R. is willing to do so. The Service has also submitted an affidavit from a legal advisor in the Department of State declaring that the respondent's deportation to the U.S.S.R. pursuant to section 243(a)(7) of the Act would not contravene our country's longstanding refusal to recognize the legitimacy of the Soviet annexation of Estonia.

---

them two separate terms. Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97-116, § 18(i), 95 Stat. 1611, 1620 (codified as amended at 8 U.S.C. § 1253(a) (1982)). This amendment was intended merely to correct an error in punctuation in the Act as originally published. H.R. Rep. No. 264. 97th Cong., 1st Sess. 34, *reprinted in* 1981 U.S. Code Cong. & Ad. News 2577, 2603. Indeed, prior to 1952 our immigration laws had contained an identical provision authorizing deportation to "any country of which . . . an alien is a subject, national, or citizen." Section 20 of the Immigration Act of 1917, 39 Stat. 874, 890, *amended by* Subversives Activities Control Act of 1950, § 23, 64 Stat. 987 (repealed 1952).

Therefore, since the amendment made by Congress in 1981 was merely to correct an error in punctuation rather than to effectuate a substantive change in the law, we do not consider the amendment to have affected the validity of the Second Circuit's construction in *Ng Kam Fook* v. *Esperdy, supra.* Moreover, to read "subject" as a term that is essentially synonymous with the words "national" and "citizen" in describing an individual who owes allegiance to a state is consistent with the meaning that traditionally has been accorded to the term "subject." *See* Borchard, *Diplomatic Protection of Citizens Abroad*, 11 Colum. L. Rev. 231 (1911); Coudert, *Our New Peoples, Citizens, Subjects, Nationals or Aliens*, 3 Colum. L. Rev. 13 (1903); 3 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 11.3b (rev. ed. 1985).

Since no other country is willing to accept the respondent, we conclude that the U.S.S.R. is a proper country of deportation for him.[7]

The respondent has argued, however, that the immigration judge erred by failing to consider all of the evidence the respondent submitted pertaining to the effect of his deportation to the U.S.S.R. upon our foreign policy. The respondent's evidence consists of testimony and letters from various persons, such as former officials and residents of the Baltic states, the consul general of Estonia, and the Charges d'Affaires of Lithuania and Latvia, expressing the opinion that deportation of a native of Estonia to the U.S.S.R. would violate United States foreign policy and would deal a harsh blow to the citizens of the Baltic states currently living under Soviet domination. Since the Department of State is the agency in the Government with the responsibility for formulating our foreign policy, we consider its opinion to be the only one that is relevant to the issue of whether the respondent's deportation to the U.S.S.R. would violate United States foreign policy. Therefore, the respondent's evidence on this issue was irrelevant. Moreover, since this is the case, the respondent's argument that his witnesses should have been allowed to present the official positions of various Baltic emigrant organizations has no merit whatsoever.

Furthermore, we consider the affidavit from the Department of State to be sufficient proof of the Government's position on the foreign policy implications of the respondent's deportation to the U.S.S.R. Thus, there was no need to solicit the testimony of various Government officials on this issue and, contrary to the respondent's argument on appeal, we conclude that the immigration judge acted reasonably in refusing a request to subpoena Government officials. Lastly in this regard, we reject the respondent's contention that by considering the State Department's position we have failed to exercise our discretion to choose among the seven categories of countries listed in step #3 of section 243(a) of the Act. Our conclusion that the U.S.S.R. is a proper country of deportation is made with knowledge of the State Department's position but is not dictated by that position. Rather, as we previously indicated, we have chosen the Soviet Union based upon the facts of the respondent's case, most particularly the fact that the U.S.S.R., and no other country, has indicated a willingness to accept the respondent into its territory. Accordingly, we have not failed to exercise our discre-

---

[7] Our designation of the U.S.S.R. pursuant to section 243(a)(7) of the Act moots the respondent's argument on appeal that the immigration judge erred in relying on section 243(a)(4) as authority for selecting the Soviet Union.

tion in this matter. *See United States ex rel. Accardi* v. *Shaughnessy*, 347 U.S. 260 (1954).

The respondent also has argued that it is unconstitutional for us to designate the U.S.S.R. because his expulsion to that country will, in effect, deprive him of his life without due process of law. This argument rests on the respondent's contention that he has been sentenced to death by firing squad in the U.S.S.R. as the result of a sham war-crimes trial held in absentia, in which his conviction and sentence were preordained by Soviet authorities.

To prove this contention the respondent attempted to introduce, on remand, translated excerpts from a Soviet legal journal reporting the facts of the respondent's 1961 conviction and an affidavit from a person alleged to be an expert on Soviet law expressing the opinion that the respondent's trial was a sham. The immigration judge did not accept these materials as evidence, and the respondent has argued that he was thereby precluded from presenting material evidence about the fundamental unfairness of his Soviet conviction and his deportation to the U.S.S.R. We note that the record of the respondent's original deportation proceeding already contains at least one law review article about the respondent's Soviet trial. That article discusses the respondent's trial as a notorious example of Soviet justice, recounting the fact that a Soviet legal journal reported the evidence and events of the respondent's trial, along with the fact of his conviction and the nature of his sentence, before the trial ever commenced. Since this article is already in the record, the additional materials the respondent wished to submit were merely cumulative, and the immigration judge did not abuse his discretion in refusing to admit them into evidence.

Although the respondent has been sentenced to death in the Soviet Union in what appears to have been a sham trial, the Constitution does not extend beyond our borders to guarantee the respondent fairness in judicial proceedings in the Soviet Union. Moreover, under our immigration laws there is no requirement that a foreign conviction must conform to our constitutional guarantees. *See, e.g., Brice* v. *Pickett*, 515 F.2d 153, 154 (9th Cir. 1975); *Matter of Awadh*, 15 I&N Dec. 775, 777 (BIA 1976). Thus, due process is not violated by the respondent's deportation to the U.S.S.R.

We are bound by law to designate a country of deportation, and the U.S.S.R. is a proper country under section 243(a)(7) of the Act. Accordingly, we affirm the designation of the U.S.S.R. and shall dismiss the respondent's appeal.

**ORDER:** The appeal is dismissed.